**RECORD NO. 13-2399**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

-------------------------

ANDREA GAIL JONES,

*Plaintiff - Appellee,*

v.

SOUTHPEAK INTERACTIVE CORPORATION OF DELAWARE, TERRY M. PHILLIPS and MELANIE J. MROZ,

*Defendants - Appellants.*

-------------------------

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND
(HON. ROBERT E. PAYNE, SENIOR, PRESIDING JUDGE)

-------------------------

## OPENING BRIEF OF APPELLANTS

-------------------------

Kevin D. Holden
JACKSON LEWIS PC
Suite 1200
1021 East Cary Street
Richmond, Virginia 23219
(804) 212-2888
kevin.holden@jacksonlewis.com

*Counsel for Appellants*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for SouthPeak Interactive Corporation ("SouthPeak"), a Delaware Corporation, declares that SouthPeak is a publically traded company.  It does not have a parent company and there is no publically traded corporation that owns 10% of its stock. There are no parents, trusts, subsidiaries and/or affiliates of SouthPeak party that have issued shares or debt securities to the public, nor is there any other publically held corporation that has a direct financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE .............................................................................3

SUMMARY OF ARGUMENT .............................................................................8

STANDARD OF REVIEW .................................................................................10

ARGUMENT ......................................................................................................11

I.   THE DISTRICT COURT FAILED TO DISMISS COUNT I BASED ON THE
     APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS ......................................11

     A    PRIVATE CAUSES OF ACTION BROUGHT UNDER SARBANES-
          OXLEY, 18 U.S.C. § 1514A, THAT "INVOLVE" FRAUD ARE
          SUBJECT TO A TWO-YEAR STATUTE OF LIMITATIONS (OR A FIVE
          YEAR STATUTE OF REPOSE) ................................................................11

     B.   JONES' SARBANES-OXLEY WHISTLEBLOWER COMPLAINT
          INVOLVES ALLEGATIONS OF FRAUD .....................................................13

     C.   JONES' SARBANES-OXLEY WHISTLEBLOWER COMPLAINT IS
          BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS SET FORTH
          AT § 1658(B)(1) ...................................................................................15

II.  JONES FAILED TO ADMINISTRATIVELY EXHAUST THE CLAIMS AGAINST
     PHILLIPS AND MROZ .......................................................................................18

     A.  THE FACTS PRESENTED TO THE LOWER COURT ESTABLISHED THAT
         JONES EXHAUSTED HER CLAIM AGAINST SOUTHPEAK, BUT OSHA
         DID NOT PROCESS, INVESTIGATE, OR EXHAUST ANY CLAIMS AGAINST
         PHILLIPS OR MROZ ................................................................................18

i

B. PRIVATE CAUSES OF ACTION UNDER SARBANES-OXLEY ARE SUBJECT TO AN ADMINISTRATIVE EXHAUSTION REQUIREMENT THAT IS JUDICIAL IN NATURE AND CANNOT BE DISREGARDED................................21

C. BECAUSE JONES DID NOT EXHAUST HER CLAIMS AGAINST PHILLIPS AND MROZ THE LOWER COURT SHOULD HAVE DISMISSED THE CLAIMS ASSERTED AGAINST PHILLIPS AND MROZ....................................23

III. THE EMOTIONAL DAMAGES AWARDED AGAINST PHILLIPS AND MROZ CANNOT STAND AS A MATTER OF LAW ..........................................................25

A. THE LOWER COURT IMPROPERLY ALLOWED EMOTIONAL DAMAGES TO BE AWARDED AGAINST PHILLIPS AND MROZ ...................................26

B. EVEN AS REDUCED, THE EMOTIONAL DAMAGE AWARD IS EXCESSIVE .........................................................................................28

IV. THE VERDICT INITIALLY RETURNED BY THE JURY WAS NOT VAGUE OR INCONSISTENT AND SHOULD HAVE BEEN ENTERED AS RECEIVED .................34

A. THE LOWER COURT ABUSED ITS DISCRETION IN NOT ACCEPTING THE FIRST JURY VERDICT AND/OR ORDERING A NEW TRIAL ...................34

B. AS THE SECOND VERDICT IS INHERENTLY INCONSISTENT, THE LOWER COURT ABUSED ITS DISCRETION IN NOT GRANTING THE SOUTHPEAK DEFENDANTS A NEW TRIAL ...............................................38

C. THE JURY EXCEEDED THE INSTRUCTIONS OF THE COURT AND CHANGED THE VERDICT AGAINST SOUTHPEAK INTERACTIVE ..............39

CONCLUSION ....................................................................................................41

REQUEST FOR ORAL ARGUMENT ....................................................................42

CERTIFICATE OF COMPLIANCE........................................................................43

CERTIFICATE OF SERVICE ...............................................................................44

ADDENDUM ......................................................................................................45

ii

# TABLE OF AUTHORITIES

## CASES

Page

*Allen v. Admin. Review Board*,
    514 F.3d 468 (5th Cir. 2008) ...........................................................................13

*American Nuclear Resources, Inc. v. United State Department of Labor*,
    134 F.3d 1292 (6th Cir. 1998) .........................................................................13

*Anheuser-Busch, Inc. v. John Labatt Ltd.*,
    89 F.3d 1339 (8th Cir. Mo. 1996).......................................................................3

*Barber v. Whirlpool Corp.*,
    34 F.3d 1268 (4th Cir. 1994) ...........................................................................30

*Biggs v. Dupo*,
    892 F.2d 1298 (7th Cir. 1990))........................................................................31

*Blakey v. Continental Airlines, Inc.*,
    992 F. Supp. 731 (D.N.J. 1998)......................................................................30

*Bozeman v. Per-Se Technologies, Inc.*,
    456 F. Supp. 2d 1282 (N.D. Ga. 2006)............................................................22

*Bridges v. McDonald's Corp.*,
    2009 U.S. Dist. LEXIS 118597 (N.D. Ill. Dec. 21, 2009) ........................21, 22

*Cline v. Wal-Mart Stores*,
    144 F.3d 294 (4th Cir. Va. 1998) .......................................................10, 31, 33

*Day v. Staples*,
    555 F.3d 42 (1stCir. 2009)................................................................................14

*Dennis v. Columbia Colleton Medical Center, Inc.*,
    290 F.3d 639 (4th Cir. 2002) ..........................................................................33

*Ellis v. CommSCOPE, Inc.*,
    2008 U.S. Dist. LEXIS 70543 (N.D. Texas 2008) .............................12, 14, 15

*First State Bank v. Jubie*,
   86 F.3d 755, 1996 U.S. App. LEXIS 13557 (8th Cir. June 7, 1996) .............39

*Gallick v. Baltimore & Ohio R.R. Co.*,
   372 U.S. 108, 9 L. Ed. 2d 618, 83 S. Ct. 659 (1963) .....................................39

*Hanna v. WCI Communities, Inc.*,
   2004 U.S. Dist. LEXIS 25652 (S.D. Fla. Nov. 15, 2004) ..............................22

*Hemphill v. Celanese Corp.*,
   No. 3:08-CV-2131-B, 2009 U.S. Dist. LEXIS 84049 (N.D. Tex. Sept.
   14, 2009) ..........................................................................................................26

*Hetzel v. County of Prince William*,
   89 F.3d 169 (4th Cir. 1996) ....................................................................31, 32

*Hetzel v. County of Prince William*,
   No. 98-1514, 1999 U.S. App. LEXIS 19269 (4th Cir. Aug. 17, 1999)..........33

*Johnson v. Georgia Highway Express, Inc.*,
   417 F.2d 1122 (5th Cir. 1969) .......................................................................27

*Johnson v. Hugo's Skateway*,
   974 F.2d 1408 (4th Cir. 1992) .......................................................................30

*Jones v. Home Federal Bank*,
   No. CV09-336-CWD, 2010 U.S. Dist. LEXIS 3579 (D. Idaho Jan. 4,
   2010) ................................................................................................................26

*Knussman v. Maryland*,
   272 F.3d 625 (4th Cir. Md. 2001).......................................................29, 30, 34

*Livingston v. Wyeth Inc.*,
   2006 U.S. Dist. LEXIS 52978 (M.D.N.C. July 28, 2006).............................13

*Lockheed Martin Corp. v. Administrative Review Board, U.S. Department of
   Labor*,
   2013 U.S. App. LEXIS 11159 (10th Cir. 2013)......................................29, 30

iv

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ...................................................................................17

*Murray v. TXU Corp.*,
    Civ. Action No. 3:03-cv-0888, 2005 U.S. Dist. LEXIS 10945 ......................29

*Murray v. TXU Corp.*,
    Civ. Action No. 3:03-cv-0888, 2005 U.S. Dist. LEXIS 10945 (N.D.
    Tex. June 7, 2005) ...............................................................................26, 27

*Picogna v. Board of Education*,
    N.J. 391, 671 A.2d 1035 (N.J. 1996) ...............................................................30

*Price v. City of Charlotte*,
    *93* F.3d 1241 (4th Cir. 1996) .................................................................31, 33

*Riddle v. First Tennessee Bank*,
    2012 U.S. App. LEXIS 18684 (6th Cir. Tenn. 2012) ....................................14

*Rodgers v. Fisher Body Div.*,
    739 F.2d 1102 (6th Cir. 1984)) ..................................................................32

*Schmidt v. Levi Strauss & Co.*,
    621 F. Supp. 2d 796 (N.D. Cal. 2008) ...........................................................26

*Smith v. Corning Inc.*,
    U.S. Dist. LEXIS 52958, 2007 WL. 2120375 (W.D.N.Y. July 23,
    2007) .........................................................................................................22, 23

*Smith v. Psychiatric Solutions, Inc.*,
    2009 U.S. Dist. LEXIS 27608, 2009 WL. 903624 (N.D. Fla. Mar. 31,
    2009) .........................................................................................................24

*Stoleson v. United States*,
    708 F.2d 1217 (7th Cir. 1983) .......................................................................30

*United States v. Burke*,
    504 U.S. 229, 119 L. Ed. 2d 34, 112 S. Ct. 1867 (1992) ...............................27

*Walton v. Nova Information System*,
    514 F. Supp. 2d 1031 (E.D. Tenn. 2007) ........................................................26

*Xie v. Hospira, Inc.*,
    2011 U.S. Dist. LEXIS 100537 (N.D. Ill. Sept. 2, 2011) ...............................13

## STATUTES

18 U.S.C. § 1341 ............................................................................................11
18 U.S.C. § 1342 ............................................................................................11
18 U.S.C. § 1344 ............................................................................................11
18 U.S.C. § 1514A(c)(2) ................................................................................26
28 U.S.C. § 1219 ..............................................................................................1
28 U.S.C. § 1331 ..............................................................................................1
28 U.S.C. § 1514A .................................................................................*passim*
28 U.S.C. § 1658 ............................................................................................18
28 U.S.C. § 1658(a) ...................................................................................6, 16
28 U.S.C. § 1658(a)(1) .....................................................................................8
28 U.S.C. § 1658(b) .......................................................................................16
28 U.S.C. § 1658(b)(1) ...............................................................................5, 15
28 U.S.C. § 1983 ............................................................................................27
42 U.S.C. § 2000e-5(g) (1991) ......................................................................27

29 C.F.R. 1980.114(b) .....................................................................................5

Fed. R. App. P. 4(A)(1)(a) ...............................................................................1

*Public Company Accounting Reform and Investor Protection Act of 2002*,
    Pub. L. No. 107-204 § 804, 116 Stat. 745, 801 *codified in part at* 28
    U.S.C. § 1658(b) ...........................................................................................12

## JURISDICTIONAL STATEMENT

This Court has general jurisdiction over the lower court's Final Judgment Order entered on November 21, 2013, JA 2118-2021, because it is a final, appealable order. 28 U.S.C. § 1219. The Final Judgment Order disposes of all merits issues between the parties – the only remaining issue before the lower court is a petition by Appellee-Plaintiff for the recovery of her attorney's fees.

The lower court had federal subject matter jurisdiction over this matter under 28 U.S.C. § 1331 because it was based on a claim brought under a federal statute, 28 U.S.C. § 1514A. The Appellant-Defendants dispute, however, whether the lower court had subject matter jurisdiction over the individual claims asserted in Count I against Appellant-Defendant Terry Phillips ("Phillips") and Appellant-Defendant Melanie Mroz ("Mroz"), as the SouthPeak Defendants contend (and have asserted in this appeal) that the Appellee-Plaintiff Andrea Jones ("Jones") failed to exhaust her administrative remedies against those individuals.

The Appellant-Defendants timely filed their Amended Notice of Appeal on November 23, 2013, JA 2122-2124, which was within 30 days of the Final Judgment Order. Fed. R. App. P. 4(A)(1)(a).

## <u>STATEMENT OF THE ISSUES</u>

1.      Do the claims set forth in Count I – wherein the plaintiff asserts that she accused her former employer of engaging in fraud and was thereafter terminated for reporting fraudulent conduct – "involve a claim of fraud" and therefore subject to the two-year statute of limitations of 28 U.S.C. § 1658(b)(1)?

2.      Does a district court have jurisdiction over Sarbanes-Oxley claims that were not processed, and thereby not exhausted, by OSHA, and if so, does a Sarbanes-Oxley whistleblower have the right to pursue claims against individuals that were not given the opportunity to resolve claims asserted against them individually before the appropriate administrative agency?

3.      Are emotional damages available under 28 U.S.C. § 1514A, and if so, did Jones fail to provide evidence to support an award of $100,000 in emotional damages?

4.      Did the lower court abuse its discretion when it (a) did not accept the jury's first verdict, even after the jury returned to deliberate further and then sent a handwritten note explaining that it did not want to award damages against Phillips and Mroz individually, and/or (b) did accept the second verdict and thereafter refused to order a new trial, even though it was clear the jury did not follow the instructions of the lower court?

## STATEMENT OF THE CASE

1.    SouthPeak, at all times relevant to this dispute, was an independent developer and publisher of video games.  JA 33.

2.    On June 20, 2007, SouthPeak hired Jones to work as its bookkeeper.

3.    On May 12, 2008, Global Services Partners Acquisition Corp. ("GSPAC"), a publicly traded special purpose acquisition corporation, acquired all of SouthPeak's outstanding membership interests.  As a result of this acquisition, SouthPeak Interactive, LLC, which was previously a privately held company, became a subsidiary of a public company and GSPAC changed its name to SouthPeak Interactive Corporation. *Id.* After GSPAC acquired SouthPeak Interactive, LLC on May 12, 2008, SouthPeak's Board of Directors appointed Jones – who had no previous experience in such a position – to work as SouthPeak's chief financial officer and treasurer.  *Id.*

4.    In February of 2009, SouthPeak wanted to order additional units of one of its most popular videogames, *My Baby Girl,* from Nintendo.  JA 35.  Acting on the advice of corporate counsel, Phillips put up personal funds as a deposit or "cash collateral" to secure the order.  The SouthPeak employee that normally handled such transactions, Patrice Strachan ("Strachan"), was out of the office to attend her mother's funeral, and a different person was asked to process the

transaction.   JA 35.   Upon returning to work, Strachan did not record the wire transfer.

5.      As a result, SouthPeak's financial statements for the quarter ending on March 31, 2009, as reported in SouthPeak's Form 10-Q, did not reflect that the cash collateral provided by Phillips had been converted to a payment, creating an account payable to Phillips.  In other words, the Form 10-Q for the period ending March 31, 2009 did not reflect that $200,000 was owed to Phillips for inventory that had been purchased and therefore, understated the cost of goods sold.  JA 38.

6.      Jones discovered the mistake shortly after the Form 10-Q for the period ending March 31, 2009 was filed with the Securities and Exchange Commission ("SEC") and on June 8, 2009 called the head of the audit committee, David Buckel ("Buckel"), to allege that the mistake was the result of fraud.  JA 37-38.  (During the call Jones also mentioned she had also made a material mistake on the financial records in approximately the same amount, and so long as they were going to file an amended 10-Q, they might as well correct that mistake too.)

7.      Two months later, on August 13, 2009, SouthPeak's six person Board of Directors, which included Phillips and Mroz, voted in favor of terminating Jones' employment for numerous job-related shortcomings. *Id.*

8.      On October 5, 2009, Jones, by counsel, filed a Complaint with the Occupational Safety and Health Administration ("OSHA") claiming that she was

4

terminated in retaliation for attempting to correct misstatements filed by SouthPeak with the SEC ("OSHA Complaint"). JA 643-646.

9.    OSHA did not issue its decision on the OSHA Complaint within 180 days of receiving the Complaint and Jones, by counsel, provided OSHA notice on July 23, 2010 that it would be filing suit in federal court upon expiration of the fifteen day notice period set forth at 29 C.F.R. 1980.114(b).  JA 671.

10.    On June 8, 2012, nearly three years after she was allegedly terminated for complaining about certain financial transactions, Jones filed a Complaint in the United Stated District Court, alleging, among other things, whistleblower claims under § 1514A of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") against SouthPeak, as well as against Phillips and Mroz individually.  Receipt of this lawsuit, after OSHA no longer had the ability to address and resolve these claims, was the first time Phillips and Mroz were put on notice that Jones was asserting claims against them.[1]

11.    The SouthPeak Defendants moved to dismiss the claims asserted in Count I on the grounds that they were time barred under the two year statute of limitations set forth at 28 U.S.C. § 1658(b)(1) and that the lower court did not have jurisdiction to consider the claims asserted against Phillips and Mroz because those

---

[1] Jones also filed claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") and for breach of contract.  Jones withdrew her contract claim prior to trial and did not appeal the lower court's dismissal of the Dodd-Frank claim.  As such, those claims are not at issue on appeal.

5

claims had not been administratively exhausted. JA 458. The District Court denied that motion concluding that Count I was not governed by the statute of limitations for claims that "involve" fraud but by the four-year statute of limitations set forth at 28 U.S.C. § 1658(a). JA 735. The lower court also refused to dismiss the claims set forth in Count I against Phillips and Mroz based on a failure to exhaust, although it did conclude that OSHA did not processed any individual claims against Phillips and Mroz and that Phillips and Mroz had not been made aware of any individual claims asserted against them until this lawsuit was filed. JA 741.

12.    The § 1514A claims against SouthPeak, Phillips and Mroz proceeded to a trial on the merits. Following the close of evidence, the jury was instructed (over the objections of the SouthPeak Defendants) that it could consider and award, among other things, emotional damages to Jones.

13.    Based on those instructions, the jury first returned a verdict against SouthPeak for back-pay damages of $538,000 and emotional damages of $375,000 and against Phillips and Mroz for zero damages. JA 2090. The jury was instructed to deliberate further and thereafter sent a note to the lower court that it did not want to award damages against Phillips or Mroz. After being further instructed by the lower court, the jury returned a second verdict against SouthPeak for back pay damages of $593,000 and zero emotional damages, against Phillips for zero back

6

pay damages and $178,000 for emotional damages, and against Mroz for zero back pay damages and $178,000 in emotional damages.  JA 2090-91.

14.     On the motion of the SouthPeak Defendants, the damage awards were subsequently remitted to a total amount of $100,000 in emotional damages, split evenly between Phillips and Mroz, so that $50,000 in emotional damages were awarded against Phillips and $50,000 in emotional damages were awarded against Mroz.  The award against SouthPeak was also remitted to an award of $470,000 in back pay and $123,000 in compensatory damages.  *Id.*

## SUMMARY OF ARGUMENT

The claims under Count I "involve a claim of fraud," and as such, are governed by the two-year statute of limitations set forth at 28 U.S.C. § 1658(a)(1). The lower court erred when it instead applied the "catch all" statute of limitations provided under § 1658 (b), and should have dismissed the claims asserted under Count I as being time barred.

Jones failed to unambiguously allege in her complaint to OSHA individual claims against Phillips and Mroz. Further, Jones knew OSHA was not addressing, processing or investigating individual claims against Phillips or Mroz yet did not attempt to request that OSHA expand its investigation to include claims against Phillips or Mroz or even put Phillips and/or Mroz on notice that she was attempting to assert and/or exhaust claims against them as well as SouthPeak. The requirement that Sarbanes-Oxley claims be administratively exhausted is jurisdictional and a failure to exhaust such claims relieves the lower court of subject matter jurisdiction to consider such claims. Whether the failure to exhaust should be blamed on Jones or OSHA, it is clear that Jones has failed to administratively exhaust her claims against Phillips and Mroz individually and those claims, as asserted under Count I, should have been dismissed.

Sarbanes-Oxley whistleblower claims are governed by 28 U.S.C. § 1514A. That statute does not provide for non-pecuniary remedies, such as emotional damages. The lower court should not have instructed the jury that such damages

8

were available under Count I and as the only damages awarded against Phillips and Mroz were emotional damages, this Court should vacate those awards and enter judgment in favor of Phillips and Mroz on Count I. In addition, Jones did not present sufficient evidence to support an emotional damage award of $100,000 and this Court should reduce that claim to not more than $10,000.

Lastly, the jury did not follow the instructions of the lower court and eventually returned a verdict that cannot be reconciled as a matter of law. The lower court improperly failed to accept the first jury verdict and abused its discretion when it failed to reinstate the first verdict or order a new trial.

## STANDARD OF REVIEW

Issues concerning the applicable statute of limitations (Issue One), whether Jones should be excused from exhausting her administrative remedies against Phillips and/or Mroz (Issue Two), and whether emotional damages are available under § 1514A (Issue Three, part one) are questions of law and reviewed *de novo* by this Court.

Issues regarding whether Jones presented sufficient evidence to support an award of $100,000 in emotional damages is a matter of law (Issue Three, part two) and reviewed *de novo* by this Court. *See Cline v. Wal-Mart Stores*, 144 F.3d 294 (4th Cir. Va. 1998) ("there must be an upper limit [to allowable damages]," and the question of whether that limit has been surpassed "is not a question of fact with respect to which reasonable men may differ, but a question of law").

The grant or denial of a motion for new trial (Issue Four) is reviewed for an abuse of discretion.

10

# ARGUMENT

## I. THE DISTRICT COURT FAILED TO DISMISS COUNT I BASED ON THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS

### A. PRIVATE CAUSES OF ACTION BROUGHT UNDER SARBANES-OXLEY, 28 U.S.C. § 1514A, THAT "INVOLVE" FRAUD ARE SUBJECT TO A TWO-YEAR STATUTE OF LIMITATIONS (OR A FIVE YEAR STATUTE OF REPOSE).

Sarbanes-Oxley prohibits any company with a class of securities registered under § 12 of Securities Exchange Act of 1934 (or that is required to file reports under § 15(d) of the same Act) from discharging any employee because he or she provided information relating to an alleged violation of 18 U.S.C. § 1341, 1342, 1344, or 1348, or any rule or regulation of the SEC, or any provision of federal law relating to fraud against shareholders. 28 U.S.C. § 1514A. In 2002, Congress amended the statute of limitations for private causes of action under Sarbanes-Oxley by providing that any such cause of action must be brought within two years of discovery of the cause of action:

> (a) … [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934, may be brought not later than the earlier of –
>
> (1) 2 years after the discovery of the facts constituting the violation;
>
> or

11

       (2) 5 years after such violation.

*Public Company Accounting Reform and Investor Protection Act of 2002,* Pub. L. No. 107-204 § 804, 116 Stat. 745, 801 *codified in part at* 28 U.S.C. § 1658(b).

The limitations period provided by § 1658(b), as added by this amendment, applies to all proceedings addressed by this section that commenced on or after July 30, 2002. *Id.*

       The two-year statute of limitations set forth at 28 U.S.C. § 1658(b) applies to Sarbanes-Oxley whistleblower claims brought under § 1514A. *Ellis v. CommSCOPE, Inc.,* 2008 U.S. Dist. LEXIS 70543 (N.D. Texas 2008) (attached hereto as Exhibit 1). In *CommSCOPE,* a former employee brought a Sarbanes-Oxley whistleblower claim under § 1514A, claiming that he was terminated for complaining that his employer had misrepresented the performance capabilities of its product. *Id.* at * 2. In reviewing whether the Sarbanes-Oxley claim was filed in a timely manner, the *CommSCOPE* court found that the relevant statute of limitations was the two-year statute of limitations contained within Sarbanes-Oxley at § 1658(b). *Id.* at *14 (holding that a Sarbanes-Oxley whistleblower claim was timely under § 1658, since it was filed within two years of discovery of the wrongful act). The *CommSCOPE* court recognized that the statute does not include or make reference to when a complainant must file a complaint in the district court after giving his fifteen day notice of an intention file suit and, as such, rejected the argument that Sarbanes-Oxley whistleblowers must merely file suit in

federal court "promptly" after the expiration of the fifteen-day notice period.  *Id. at* *13-14.

        B.    JONES' SARBANES-OXLEY WHISTLEBLOWER COMPLAINT INVOLVES ALLEGATIONS OF FRAUD.

To establish a cause of action under § 1514A, a plaintiff must plead and prove that he or she had a reasonable belief that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders. *Allen v. Admin. Review Bd.*, 514 F.3d 468, 479-480 (5th Cir. 2008); *see also Xie v. Hospira, Inc.*, 2011 U.S. Dist. LEXIS 100537 (N.D. Ill. Sept. 2, 2011)(a failure to produce evidence giving rise to a reasonable inference that the defendant employer hid the discrepancy with intent to defraud its shareholders is fatal to plaintiff's retaliation claim under § 1514A).  As the district court in *Livingston v. Wyeth Inc.* noted in discussing whether a whistleblower had engaged in "protected conduct" under § 1514A of Sarbanes-Oxley:

> Sarbanes-Oxley was enacted to address corporate fraud on shareholders. One way it does so is by protecting employees who report violations of laws that relate to shareholder fraud. It is clear from the plain language of the statute and its legislative history that fraud is an integral element of a whistleblower cause of action.

*Livingston v. Wyeth Inc.,* 2006 U.S. Dist. LEXIS 52978 (M.D.N.C. July 28, 2006)(emphasis added); *see also American Nuclear Res., Inc. v. United State Dep't of Labor*, 134 F.3d 1292, 1295-96 (6th Cir. 1998) (protected activity must implicate the substantive law protected in Sarbanes-Oxley "definitively and specifically").

As such, to prove her claim under § 1514A, Jones had to establish either actual fraud or (1) that she subjectively believed that SouthPeak intended to deceive shareholders (and thereby commit a fraud) and (2) a reasonable, objective basis for her belief that SouthPeak intended to defraud its shareholders. *See, for example, Day v. Staples*, 555 F.3d 42, 55(1stCir. 2009) ("To have an objectively reasonable belief that there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud."); *see also Ellis v. CommSCOPE*, Inc., 2008 U.S. Dist. LEXIS 70543 (N.D. Tex. Sept. 11, 2008) ("Thus, for an employee who reports category six behavior to be protected by § 1514A, 'the employee must reasonably believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders.'") (citations omitted); *Riddle v. First Tennessee Bank*, 2012 U.S. App. LEXIS 18684 (6th Cir. Tenn. 2012) (dismissing a § 1514A whistleblower claim because the former employee failed to present any evidence proving that it was the defendant's intent to commit fraud against the shareholders or that the employee reasonably believed that it was the defendant's intent to defraud the shareholders).  It is therefore not surprising that Jones alleged in support of Count I that she was discharged in retaliation for reporting to the Chair of the Audit Committee and SEC that certain employees intended to and did in fact commit a fraud on SouthPeak's shareholders and violated federal law relating to fraud against shareholders.  JA 44-45.

14

C.   JONES' SARBANES-OXLEY WHISTLEBLOWER COMPLAINT IS
     BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS SET FORTH
     AT § 1658(B)(1).

Jones was aware of the factual basis for her Sarbanes-Oxley whistleblower claims as of August 14, 2009, and to the extent Jones wanted to file a private lawsuit under § 1514A, she had two years from that date to complete exhaustion of her administrative remedies – which by federal law cannot take more than 180 days – and file this lawsuit.  Yet, Jones did not file this lawsuit until June 8, 2012, more than two years after August 14, 2009.  Jones was at all times represented by counsel, and having provided the Secretary of Labor notice of her intent to file a lawsuit in federal court on July 23, 2010, she had no reason not file her whistleblower claim within the two-year statute of limitations for claims that "involve a claim of fraud."  As Jones did not file her whistleblower action under § 1514A of Sarbanes-Oxley until June 8, 2012, nearly three years after SouthPeak terminated her employment, the claims alleged in Count I are time barred under 28 U.S.C. § 1658(b).  S*ee Ellis v. CommSCOPE, Inc.,* 2008 U.S. Dist. LEXIS 70543 (N.D. Texas 2008).

In reviewing this issue, the lower court correctly recognized – and the parties agreed – that one of two statute of limitations applied:  either the two-year statute of limitations of § 1658(b) or the four-year statute of limitations of § 1658(a). However, the lower court incorrectly concluded that Count I – wherein Jones claimed that SouthPeak fraudulently attempted to mislead shareholders as to the

15

value of SouthPeak stock by not including certain information in a pubic filing and that she was fired for bringing this fraudulent behavior the attention of SouthPeak's Audit Committee and the SEC – did not "involve a claim a fraud." Instead, and without citation to any relevant case law, proffered an argument not raised by either party; to wit, that (a) whistleblower claims involve two separate violations, (b) assuming the statute of limitations begins on the first violation on the date of the fraud (and not when the cause of action accrues), and (c) it is "plausible" that, if the two-year statute of limitations begins to run on the date a fraud was discovered (but before the relevant cause of action accrued), there could be an instance where "the statute of limitations was exhausted before the cause of action accrued." JA 749. The lower court reasoned that this is an "absurd" result and therefore § 1658(b) must not apply to whistleblower claims under § 1514A. The lower court reasoned further that if § 1658 (b) did not apply, then it must be that the four-year statute of limitations of § 1658(a) applies to Count I and refused to dismiss the claims alleged under Count I as time barred.

Respectfully, the lower court's reasoning is flawed. The statute of limitations that was created as part of the Sarbanes-Oxley framework (which at the time included whistleblower claims under § 1514A) provides a two-year statute of limitations for claims that "involve" fraud. The statute does not contemplate or suggest that it is addressing two separate violations, nor would the two-year statute of limitations of § 1658(b) cause the "absurd" result invented by the lower court.

16

A statute of limitations begins to run on the date a cause of action accrues, that is, once *all* of the essential elements of the cause of action at issue have occurred. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (holding that because the two-year statute of limitations under § 1658(b) does not begin to run until all the facts necessary to establish the cause of action have occurred and been discovered, it is the date the plaintiff obtains evidence of the "'fact' of scienter," which the Court stated "'constitut[es]' an important and necessary element of a § 10(b) claim" that the statute of limitations commences). The phrase "facts constituting [a] violation" derives from longstanding ordinary and legal usage of similar language and indicates the appropriate contents of a pleading seeking judicial relief. In ordinary usage, to "constitute" a thing is "to make [it] up, as being the constitutive element or elements." Webster's New International Dictionary of the English Language 571-72 (2d ed. 1953).

A cause of action does not commence when only some of the elements of a cause of action take place. It is the injury that starts the clock ticking. As such, even under the example suggested by the lower court, it is the adverse action (i.e., the termination of Jones' employment) that constitutes the final element of a private cause of action under § 1514A, and the two-year statute of limitations runs from that date, not the date on which Jones discovered what she thought was fraudulent conduct.

In short, this action was not filed within two years of when the private cause of action accrued. The claims alleged in Count I, which allege and require that Jones prove she had a good faith belief that SouthPeak engaged in fraud, necessarily "involve" fraud and were therefore time barred. The SouthPeak Defendants request that this Court rule that the claims asserted under Count I are governed by § 1658, vacate the ruling by the lower court, and because there are no facts in dispute on this issue, enter judgment on behalf of the SouthPeak Defendants on Count I and dismiss the claims asserted against Phillips and Mroz individually.

## II.    JONES FAILED TO ADMINISTRATIVELY EXHAUST THE CLAIMS AGAINST PHILLIPS AND MROZ

A.    THE FACTS PRESENTED TO THE LOWER COURT ESTABLISHED THAT JONES EXHAUSTED HER CLAIM AGAINST SOUTHPEAK, BUT OSHA DID NOT PROCESS, INVESTIGATE, OR EXHAUST ANY CLAIMS AGAINST PHILLIPS OR MROZ.

Jones, by counsel, filed a claim with the Department of Labor, via OSHA, alleging that she was terminated in retaliation for, among other things, complaining about alleged violations of securities fraud. The OSHA Complaint – which is directed at SouthPeak and is based on the claim that SouthPeak Interactive Corp. wrongfully terminated Jones' employment – provided as follows:

> On August 14, 2009, in a clear violation of the Act, SouthPeak terminated Ms. Jones' employment, apparently in retaliation for Ms. Jones' attempts to correct statements in periodic reports filed, and proposed to be filed, by SouthPeak under Section 13. In accordance with the above referenced section of the Act, Ms.

18

Jones therefore states the following in support of her whistleblower claim. The bold paragraphs correspond to the numbered items in the OSHA Fact Sheet.[2]

As for the "unfavorable personnel action," Jones claimed in the OSHA Complaint that she was "summarily terminated" and that "the protected activity described above was a substantial contributing factor *in the company's decision to terminate her*." JA 646 (emphasis added). Jones did not specifically identify Phillips or Mroz in the caption of her OSHA Complaint or specifically assert that either Phillips or Mroz did anything to her. She did, however, provide the following information on page two of the OSHA Complaint, a document that was not provided to Phillips or Mroz:

**The names and addresses of the company(s) and persons who are alleged to have violated the Act (who the complaint is being filed against):**

SouthPeak Interactive Corporation
2900 Polo Parkway
Midlothian, VA 23113
804-378-5100

Terry Phillips, Chairman of the Board
Patrice Strachan, Vice President of Operations
Melanie Mroz, Chief Executive Officer

OSHA processed the OSHA Complaint as a wrongful discharge claim against SouthPeak exclusively and issued a letter to SouthPeak (but not Phillips or

---

[2] A copy of the OSHA Complaint dated October 5, 2009 was attached to the SouthPeak Defendants' Final Reply in Support of Motions to Dismiss for Lack of Subject Matter Jurisdiction at Exhibit 1. JA 643.

Mroz) notifying SouthPeak that a claim had been filed against it. JA 651. OSHA did not state or provide any notice that a claim had been made or was proceeding against Phillips or Mroz. Rather, in the OSHA form attached to that letter, "SouthPeak Interactive Corporation" is the only entity identified by OSHA as the Respondent. JA 653.

In response to that notice of claim, SouthPeak, by counsel, filed a Position Paper dated November 12, 2009. JA 658. The Position Paper states that it is being submitted by SouthPeak to address the claims made against SouthPeak: "This firm represents SouthPeak Interactive Corporation ('SouthPeak' or the 'Company') in connection with the above-referenced Complaint filed by Andrea Jones . . . ." On December 18, 2009, OSHA provided Jones a copy of SouthPeak's Position Paper.[3]

OSHA did not issue a decision on the OSHA Complaint within 180 days, and on July 23, 2010, Jones provided OSHA a letter captioned "Removal of Whistleblower Complaint" and informed OSHA that Jones was going to file her Sarbanes-Oxley complaint in federal court. JA 671. Jones sent a copy of this letter to "Counsel for SouthPeak Interactive Corp." but did not send a copy to Phillips or Mroz. *Id.*

Based on these facts, the lower court concluded that, "it is undisputed that OSHA failed to investigate the Sarbanes-Oxley claim against the individual

---

[3] A copy of OSHA's email to Jones' attorney at Sands Anderson dated December 18, 2009, with email from Bowden confirming receipt of same, was attached to the SouthPeak Defendants Final Reply. JA 668-69.

defendants and that the individual defendants were not specifically notified by Jones of the claim against them until she notified them of the lawsuit." JA 741. The lower court nevertheless allowed the non-exhausted Sarbanes-Oxley claims to go forward against Phillips and Mroz, stating that it was not relevant that OSHA failed to process the claims against Phillips and Mroz or even notify Phillips and Mroz that a claim was being asserted against them individually. In so holding, the lower court concluded that "OSHA's incompetence" should not be imputed to Jones. JA 744.

B.     PRIVATE CAUSES OF ACTION UNDER SARBANES-OXLEY ARE SUBJECT TO AN ADMINISTRATIVE EXHAUSTION REQUIREMENT THAT IS JUDICIAL IN NATURE AND CANNOT BE DISREGARDED.

The Sarbanes-Oxley exhaustion requirement is unlike that required for Title VII claims. First, "[t]he administrative scheme underlying the Sarbanes-Oxley Act is judicial in nature and is designed to resolve the controversy on its merits, as opposed to the administrative procedures under Title VII . . . which are geared toward fostering settlement." *Bridges v. McDonald's Corp.*, 2009 U.S. Dist. LEXIS 118597, at *11-12 (N.D. Ill. Dec. 21, 2009). Requiring that an aggrieved employee specifically identify not only the corporate defendant but also any individual defendants affords OSHA the opportunity to adjudicate claims with respect to those specific individuals. *Id.* Thus, even where an individual is on constructive notice by being named as an actor in a complaint, courts consistently have emphasized that failing to name the individual as a respondent deprives

21

OSHA of the opportunity to resolve the employee's allegations with respect to the individual. *Id.* (citing cases). Because of the judicial – as opposed to conciliatory – nature of Sarbanes-Oxley proceedings, requiring that an individual defendant be named as a respondent in an administrative charge, that the individual be provided notice of the charge and the opportunity to provide a defense makes sense and is consistent with the applicable statutory scheme.

Second, unlike administrative claims filed with the EEOC, there is no OSHA intake coordinator that shapes or interprets a charge of unlawful conduct. Rather, the OSHA Complaint is drafted and filed by the complaining party and, as such, the complainant has the ability and responsibility to ensure that a complaint is accurate, clear and comprehensive. It is thus the responsibility of the complainant to specifically identify what claims are being asserted and whom the claims are being asserted against. *See Bridges v. McDonald's Corp.*, 2009 U.S. Dist. LEXIS 118597, at *8-9 (merely mentioning an individual defendant in the body of the administrative complaint as an actor, rather than naming him (or her) in the caption of the administrative complaint, fails to afford OSHA the opportunity to resolve a plaintiff's allegations through the administrative process); *Smith v. Corning Inc.*, 2007 U.S. Dist. LEXIS 52958, 2007 WL 2120375, at *2 (W.D.N.Y. July 23, 2007) (same); *Bozeman v. Per-Se Technologies, Inc.*, 456 F. Supp. 2d 1282, 1357-58 (N.D. Ga. 2006) (same); *Hanna v. WCI Communities, Inc.*, 2004 U.S. Dist. LEXIS 25652, at *7-8 (S.D. Fla. Nov. 15, 2004) (same); *see also Smith v. Psychiatric*

22

*Solutions, Inc.*, 2009 U.S. Dist. LEXIS 27608, 2009 WL 903624, at *8 (N.D. Fla. Mar. 31, 2009) (finding that plaintiff could not pursue Sarbanes-Oxley claims against parties not named in the heading of the administrative complaint).

C.    BECAUSE JONES DID NOT EXHAUST HER CLAIMS AGAINST PHILLIPS AND MROZ THE LOWER COURT SHOULD HAVE DISMISSED THE CLAIMS ASSERTED AGAINST PHILLIPS AND MROZ.

Jones alleges in her OSHA Complaint that SouthPeak – not Phillips or Mroz – terminated her employment on August 14, 2009. OSHA accepted the OSHA Complaint as one asserting a whistleblower claim against SouthPeak and, not unexpectedly, only SouthPeak filed a Position Paper in response to the OSHA Complaint. At all times Jones was aware of the fact that her Complaint was being processed against SouthPeak only, having been provided SouthPeak's Position Paper, and in accord with that understanding, when it was time for Jones to file her Removal of the Whistleblower Complaint, Jones provided only "Counsel for SouthPeak" a copy of that removal letter. It was only years later, after the OSHA proceedings had been dismissed, that Jones notified Phillips and/or Mroz that she was asserting Sarbanes-Oxley claims against them individually.

Whether it was because Jones failed to allege any facts showing that she was asserting a claim against Phillips and/or Mroz or because OSHA failed to process claims against Phillips or Mroz, one thing is clear – the claims against Phillips and Mroz were not investigated, processed, or exhausted. Further, whether or not OSHA should have processed the OSHA Complaint as asserting claims against

23

Phillips and Mroz individually, Jones was aware that OSHA was not exhausting her claims against Phillips or Mroz yet failed to inform OSHA that she wanted to also exhaust claims against Phillips and Mroz, correct any supposed oversight by OSHA, or even seek clarification as to what claims were being exhausted.

The purpose of the exhaustion requirement is to provide both the respondent and OSHA the opportunity to address, investigate, and resolve claims prior to a suit being filed in federal court. Indeed, it is entirely possible that OSHA could have found that the claims asserted against Phillip and Mroz were groundless within 180 days, which would have precluded Jones from filing in federal court.

It was Jones' obligation to ensure that the exhaustion requirement was met as to her claims against the individual defendants; to that end, it was her responsibility to draft a complaint that unambiguously asserted individual claims against Phillips and Mroz. Yet, it was Jones that asserted in support of her complaint to OSHA that it was "SouthPeak [that] terminated Jones' employment, apparently in retaliation for Ms. Jones' attempts to correct statements in periodic reports filed." Jones could have but did not include either Phillips or Mroz in the caption of her OSHA Complaint, and while Jones identified Phillips and Mroz (and Strachan) on page two of her OSHA Complaint, Jones did not provide any individual addresses for these three, which would suggest that Jones was including these names not as individual defendants, but as the top three officers at SouthPeak.

24

Whether it was Jones' fault or OSHA's fault, one thing is clear: the individual claims against Phillips and Mroz were not addressed, processed, investigated or administratively exhausted. The lower court thus erred in not dismissing the claims against Phillips and Mroz based on a failure to exhaust, and the SouthPeak Defendants respectfully request that this Court reverse that decision and dismiss the claims asserted against Phillips and Mroz in Count I.

## III.  THE EMOTIONAL DAMAGES AWARDED AGAINST PHILLIPS AND MROZ CANNOT STAND AS A MATTER OF LAW

Following a trial on the merits, the jury was instructed (over the objections of the SouthPeak Defendants) that it could consider and award emotional damages to Jones. Based on those instructions, the jury awarded $178,000 in emotional damages against Phillips and $178,000 in emotional damages against Mroz. On the motion of the SouthPeak Defendants, those damage awards were subsequently remitted to a total amount of $100,000 in emotional damages, split evenly between Phillips and Mroz, so that $50,000 in emotional damages were awarded against Phillips and $50,000 in emotional damages were awarded against Mroz.

These two awards against Phillips and Mroz cannot stand as a matter of law. First, because emotional damages are not an available remedy under the statute, and second, because Jones did not provide evidence sufficient to support even a reduced award of $100,000 (split evenly between Phillips and Mroz).

25

A.    THE LOWER COURT IMPROPERLY ALLOWED EMOTIONAL DAMAGES
      TO BE AWARDED AGAINST PHILLIPS AND MROZ.

No district court – except for the lower court in this case – has ever allowed

emotional damages to be awarded based on claims brought under the

whistleblower provisions of § 1514A.  Rather, every other district court that has

reviewed the plain language of the statute has held that § 1514A provides for

pecuniary damages, expressly providing for reinstatement, back pay, litigation

costs, experts witness and attorney fees, *see* 18 U.S.C. § 1514A(c)(2), but not non-

pecuniary damages, such as for pain and suffering.  *See Jones* v. *Home Fed. Bank,*

No. CV09-336-CWD, 2010 U.S. Dist. LEXIS 3579, at *16-18 (D. Idaho Jan. 4,

2010) (citing cases in support of emotional damages not being available to

whistleblowers under § 1514A); *see also Hemphill* v. *Celanese Corp.,* No. 3:08-

CV-2131-B, 2009 U.S. Dist. LEXIS 84049, at *13 (N.D. Tex. Sept. 14, 2009);

*Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 804 (N.D. Cal. 2008)

(Sarbanes-Oxley provides for restitution but not discretionary monetary relief);

*Walton v. Nova Info. Sys.*, 514 F. Supp. 2d 1031, 1035 (E.D. Tenn. 2007) ("In sum,

nothing leads this Court to believe that the remedies provision under the Sarbanes-

Oxley Act provides for the non-pecuniary, legal remedies claimed by Plaintiff");

*Murray v. TXU Corp.*, Civ. Action No. 3:03-cv-0888, 2005 U.S. Dist. LEXIS

10945, at *9-11 (N.D. Tex. June 7, 2005).  Many, if not all of these cases are based

on the reasoning that the remedies under the Sarbanes-Oxley are analogous to

26

remedies under Title VII prior to its 1991 amendment. At that time, Title VII provided: The court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate. 42 U.S.C. § 2000e-5(g) (1991). The Supreme Court interpreted this provision to mean that "nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *United States v. Burke*, 504 U.S. 229, 239, 119 L. Ed. 2d 34, 112 S. Ct. 1867 (1992). Accordingly, courts commonly found that such relief was purely equitable. *See, e.g., Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969); *Murray v. TXU Corp.*, Civ. Action No. 3:03-cv-0888, 2005 U.S. Dist. LEXIS 10945, at *9-11.

The single case cited by Jones and relied upon by the lower court in support of a claim for emotional damages, *Lockheed Martin Corp. v. Administrative Review Board, U.S. Department of Labor,* 2013 U.S. App. LEXIS 11159 (10th Cir. 2013), does not acknowledge or reconcile the long line of cases that have held that emotional damages are not available under § 1514A. This is likely because *Lockheed Martin* represents an appeal from an agency determination and, as such, was reviewed under lower standard of review, whereby the Court conducted a *de novo* review but was required to give deference to the agency's reasonable

27

construction of the relevant statute, in this case, Sarbanes Oxley.  In addition, the Court in *Lockheed Martin* acknowledged that the issue of what damages are available was not fully briefed by the parties, that the appellant "devotes all of four sentences to its argument," and the Court would be justified in simply disregarding the appellant's argument altogether.  *Id. at* \*42.  Finally, while it is certainly *dicta,* it is not altogether clear that *Lockheed Martin* represents an affirmance of an award for emotional damages under § 1514A, as the Court remanded the matter to the Board to reconsider its award of, among other things, "medical expenses," which were part of the compensatory damages awarded under the statute.  *Id.*

The overwhelming number of cases, which are based on a historical and well-reasoned approach, provide that emotional damages are not an available remedy under § 1514A.  The decision in *Lockheed Martin* stands alone and is not persuasive.  The SouthPeak Defendants accordingly request that this Court join the majority of cases that hold non-pecuniary damages are not available under § 1514A and remand this case to the lower court with the instructions that it strike the emotional damages awarded against Phillips and Mroz.

B.    EVEN AS REDUCED, THE EMOTIONAL DAMAGE AWARD IS EXCESSIVE.

Jones did not present evidence of a total of $100,000 in emotional damages. She did not present testimony from any medical or healthcare provider in support of such damages or evidence that she sought medical treatment for any emotional

or mental distress.  She did not present evidence that she suffered an objective manifestation of emotional damages, that she suffered damage to her reputation, or was unable to work at any time because of any emotional distress – to the contrary, there is no dispute that Jones has been successfully employed at Capital One, one of the Richmond's most prestigious employers, since 2010 and was able to work as an independent contractor prior to that point.

Jones did not claim that she experienced any noticeable weight gain (or loss).  She presented no testimony or evidence that she was unable to enjoy any of her usual hobbies or activities,  that she suffered from insomnia or excessive sleep, or that being terminated in violation of her rights under Sarbanes-Oxley had an impact on her self-image, confidence, or her relationship with her husband, children, or neighbors.  Jones did not testify that she was ever without health benefits or that at any point she was unable to financially care for her family.  Rather, the evidence that Jones did present was in the form of her own testimony and that of Keith Jones, her husband.  That testimony consisted of Jones recounting that she had to tell her family that she was "fired" and that her experience at SouthPeak was "very traumatic," "awful," and "bad."[4]  As for his part, Keith Jones

---

[4] Jones also testified that there were "a lot of emotional times," but that such "emotional times" related to "every time the law suit was brought up it brings up all the stress and anxiety that went, was going on when I was involved in working with SouthPeak." It is generally accepted, however, that stress associated with or induced by litigation is not compensable as emotional damages.  *Knussman v. Maryland*, 272 F.3d 625 (4th Cir. Md. 2001) ("Generally speaking, litigation-

testified that he had been "woken up many times in the middle of the night with her crying . . . not knowing why bad things happen." JA 1405-06. Keith Jones did testify, however, that Jones is a "strong woman" and "continues to be a great mother and a good friend and neighbor." JA 1405.

A jury's award of compensatory damages will be set aside on the grounds of excessiveness where "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice," *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1414 (4th Cir. 1992) (en banc) (quoting *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir. 1987) (quoting *Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350, 352 (4th Cir. 1941)), or "no substantial evidence is presented to support it." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir. 1994). Courts reviewing claims for emotional distress should consider, among other things, the degree of emotional distress, whether there is evidence to corroborate the plaintiff's testimony, the nexus between the challenged conduct and the emotional distress, and to what extent the plaintiff received medical attention and/or psychological or psychiatric treatment as a result of the illegal conduct. *Knussman v. Maryland*, 272 F.3d 625, 647 (4th Cir. 2001). An

---

induced emotional distress is never a compensable element of damages."); *see also Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages . . . ."); *Blakey v. Continental Airlines, Inc.,* 992 F. Supp. 731, 736 n.3 (D.N.J. 1998); *Picogna v. Board of Educ.*, 143 N.J. 391, 671 A.2d 1035, 1038-39 (N.J. 1996) (collecting cases).

award of substantial compensatory damages "must be proportional to the actual injury incurred. . . . The award must focus on the real injury sustained." *Hetzel v. County of Prince William,* 89 F.3d 169, 173 (4th Cir. 1996).

Courts must "scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." *Price v. City of Charlotte,* 93 F.3d 1241, 1251-52 (4th Cir. 1996).  As such, where a claim for emotional damages is based exclusively on the testimony of the plaintiff, the plaintiff must reasonably and sufficiently explain the circumstances of her injury and not resort to mere conclusory statements.  *Id.* (citing *Biggs v. Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990)).  Seriatim recitations of "depression" or "hurt feelings" as evidence of emotional distress fail to meet this standard.  *Id.* (citing *Hetzel v. County of Prince William,* 89 F.3d at 169) (reversing and remanding excessive compensatory damages awarded in a Title VII and § 1983 suit where it was based "almost exclusively" on plaintiff's conclusory testimony).

A review of the applicable law and cases that have dealt with this issue reveals that the evidence offered by Jones supports no more than a nominal amount of emotional damages, or none at all.  For example, in *Cline v. Wal-Mart Stores,* a plaintiff claimed that her employer violated her rights under the Civil Rights Act of 1964, as amended ("Title VII").  The jury found in favor of the plaintiff employee and awarded $117,000 in compensatory damages.  On appeal, the Fourth Circuit noted while the trial testimony suggested that the employee suffered some degree

31

of emotional trauma and anxiety, the plaintiff – similar to Jones – did not present evidence that such trauma persisted over time; that it affected her ability to perform her job or to cope with her medical condition; that she required counseling or medication of any sort; or that she suffered any physical symptoms of stress.  The Court held that, "while we emphasize that none of these factors is a prerequisite to the receipt of compensatory damages, their absence reflects a degree of injury incompatible with the jury's sizeable award."    As such, the Court in *Cline* concluded, "On the evidence presented, we find that $10,000 in compensatory damages is the outermost award that could be sustained."

Similarly, in *Hetzel v. County of Prince William*, 89 F.3d 169 (4th Cir. 1996), a jury returned a verdict in favor of a plaintiff claiming illegal retaliation and awarded $750,000 in emotional damages, which the district court reduced to $500,000.  On appeal, the Fourth Circuit observed that the damage award was based almost exclusively on the plaintiff's own testimony that she suffered from headaches, stress, and family problems.  *Hetzel*, 89 F.3d at 171.  The Fourth Circuit rejected the reduction of $250,000 as insufficient and held that "[s]imply put, the jury was presented with insufficient evidence 'to place a high dollar value on plaintiff's emotional harm.'"  *Hetzel*, 89 F.3d at 172 (citing *Rodgers v. Fisher Body Div.*, 739 F.2d 1102, 1108 (6th Cir. 1984)).  The Fourth Circuit accordingly remanded the case for a recalculation of damages, and following a *mandamus* order from the Fourth Circuit, the district court reduced the emotional damages

32

award to $15,000.  *Hetzel v. County of Prince William*, No. 98-1514, 1999 U.S. App. LEXIS 19269 (4th Cir. Aug. 17, 1999).

Another Fourth Circuit case – *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 653 (4th Cir. 2002) – illustrates the excessive nature of emotional damages awarded and the propriety of remitting, if not eliminating, the damages awarded against Phillips and Mroz.  In *Dennis*, a Title VII plaintiff alleged that she suffered stress, humiliation, and family problems as a result of illegal discrimination.  The jury awarded $25,000 in compensatory damages for emotional distress, but the district court found the emotional damage evidence lacking and nullified the award.  On appeal, the Fourth Circuit affirmed the district court's decision to strike the emotional damages claim, recounting that, while a plaintiff's testimony, standing alone, may support a claim of emotional distress, courts scrupulously analyze an award of compensatory damages and the injured party must reasonably and sufficiently explain the circumstances of her injury and not resort to mere conclusory statements.  The Court remarked further that a plaintiff must show a causal connection between the violation and the emotional distress.  *Dennis* 290 F.3d at 653.

The evidence presented by Jones is very much like, and in many ways less than, the evidence presented by the plaintiffs in *Cline, Hetzel*, and *Price*.  Further, it essentially mirrors the conclusory testimony presented by the plaintiff in *Dennis*, which was insufficient to support an emotional damage award of $25,000.  Aside

from Jones' own testimony and that of her husband, who also testified that in some ways it was a "relief" when Jones was terminated (it was the subsequent loss of income that caused distress), Jones did not offer any objective evidence in support of her claim of emotional damage. Even then, her testimony was at best conclusory and not tied to any violation of Sarbanes-Oxley.

As this Court has instructed, claims for emotional damages should be reviewed based on, among other things, the degree of emotional distress, whether there is evidence to corroborate the plaintiff's testimony, any nexus between the challenged conduct and the emotional distress, and if medical attention and/or psychological or psychiatric treatment was received as a result of the emotional distress. *Knussman v. Maryland*, 272 F.3d at 647. When considering the factors set forth in *Knussman,* as well as "the actual injury incurred," if any, and the cases cited above, the verdict returned by the jury is excessive and should be reduced to no more than a total of $10,000 in compensatory damages, or struck in its entirety.

## IV.  THE VERDICT INITIALLY RETURNED BY THE JURY WAS NOT VAGUE OR INCONSISTENT AND SHOULD HAVE BEEN ENTERED AS RECEIVED

### A.  THE LOWER COURT ABUSED ITS DISCRETION IN NOT ACCEPTING THE FIRST JURY VERDICT AND/OR ORDERING A NEW TRIAL.

The jury returned a verdict in which it stated that it was the unanimous decision of the jury to award back pay and compensatory damages against SouthPeak Interactive Corp., and that no damages had been established as to Phillips or Mroz. There was nothing ambiguous or uncertain about this verdict,

34

and despite the Court's opinion that it reflected a "conflict[]," this verdict was capable of being harmonized. Still, instead of accepting the verdict and entering the judgment, the Court questioned whether this truly reflected the intentions of the jury and expressed that the jury might, or might not, be concerned over a duplication of damages. This concern was misplaced, however, as the Court had already instructed the jury on this issue, that it need not be concerned about any "double recovery."

Still, the Court orally instructed the jury to deliberate further, stating that even though they had returned a unanimous verdict, they could go back and do something different. The Court expressed to the jury that it was sending them back to fix "a problem" with the verdict that the jury had already returned. JA 2031.

The jury deliberated further and thereafter sent a written note stating that, as it provided on the first verdict form, it wanted to award damages against SouthPeak Interactive Corp. but that it did not find that Phillips or Mroz are responsible for any damages. More specifically, that note stated:

3:12-cv-00443-REP-DJN   Document 135   Filed 07/18/13   Page 1 of 1 PageID#

*[Handwritten note:]*

From SouthPeak
We want a total of
393,000 back pay
357,000 compensatory

We do not find that Terry
Phillips or Melanie Mroz
are individually responsible
for any amount.

This note, in clear and unambiguous terms, reflected the wishes and findings of the jury and explained that it meant what it said on the verdict form: compensatory and back pay damages should be awarded against SouthPeak Interactive Corp. but not Phillips or Mroz. The note eliminated any problem or confusion about any "double recovery," and at this point the Court should have done nothing more than accept the verdict and enter the judgment.

Rather than accept the verdict, the Court instead engaged in a discussion with the jury and asked whether it was their decision that Jones "didn't have a claim against them." JA 2032. It then appeared to the lower court that one member of the jury did not agree with this characterization of the verdict, and the jury was allowed to go back and reconsider the meaning of the verdict form. Only

36

then did the jury return a damage award against Phillips and Mroz. JA 2033. This time, the Court accepted the verdict and entered the judgment without question and over the objections of the SouthPeak Defendants.

The SouthPeak Defendants respectfully submit that the initial verdict and subsequent note state in clear and unambiguous terms the decision of the jury. The Court should not have questioned the jury's decision in this regard or instruct the jury that a finding of no damages was the same as a finding that "Jones didn't have a claim against them." Such instructions pushed the jury too far and caused or at least improperly influenced the jury to reverse its decision and award damages against Phillips and Mroz. Based on such facts, the SouthPeak Defendants moved that judgment be entered in accord with first verdict and the note returned by the jury or, in the alternative, that a new trial be ordered. The lower court's denial of that request was an abuse of discretion, and this Court should overrule that decision and order that a new trial be had on the allegations contained in Count I, provided that this claim is not otherwise reversed based on the other issues raised in this appeal.

B.    AS THE SECOND VERDICT IS INHERENTLY INCONSISTENT, THE
LOWER COURT ABUSED ITS DISCRETION IN NOT GRANTING THE
SOUTHPEAK DEFENDANTS A NEW TRIAL.

As an additional ground for a new trial, the verdict that was accepted and entered by this Court is inconsistent and, as such, a new trial should be ordered. More specifically, the single claim asserted against the three defendants and the harm alleged by Jones is based on the allegation that SouthPeak Interactive Corp., Phillips and Mroz terminated Jones' employment in violation of Sarbanes-Oxley. Jones thus alleged a single set of facts that caused both types of her damages. Based on how this case was pled (and argued by Jones), it would be thus irreconcilably inconsistent to find that SouthPeak Interactive Corp. caused back pay damages but no compensatory damages and that Phillips and/or Mroz caused no back pay damages but did cause compensatory damages – since it is the same set of facts alleged against each defendant that supposedly caused the same harm.

Indeed, at no time did Jones argue or present evidence to support a position that SouthPeak Interactive Corp. caused back pay damages but not emotional damages and that Phillips and Mroz caused emotional damages but not back pay damages.  The only consistent verdict that was returned in this case was the initial verdict, which reflects that SouthPeak Interactive Corp., acting through Phillips and/or Mroz, violated § 1514A and caused Jones back pay and compensatory damages, but that Jones did not prove that Phillips or Mroz, individually, caused

38

her any damage.  At the very least, the initial verdict is certainly more consistent and in conformity with Jones' evidence and theory of the case than the second verdict, and it remains unclear, at least to the SouthPeak Defendants, how the first verdict but not the second could be viewed as in "conflict[]."

It is the duty of this Court to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent. *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339 (8th Cir. Mo. 1996); *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 9 L. Ed. 2d 618, 83 S. Ct. 659 (1963); *First State Bank v. Jubie*, 86 F.3d 755, 1996 U.S. App. LEXIS 13557, No. 95-2112, slip op. at 5 (8th Cir. June 7, 1996).   If the Court cannot harmonize the verdicts, it must reject the verdicts and order a new trial.

Here, the second verdict returned by the jury is inconsistent and cannot be harmonized in a reasonable way.  Nor is it based on the evidence or the arguments presented at trial.  As such, it was error for the lower court not to have granted the SouthPeak Defendants request to vacate the second verdict and order that a new trial be had on Count I.

C.   THE JURY EXCEEDED THE INSTRUCTIONS OF THE COURT AND CHANGED THE VERDICT AGAINST SOUTHPEAK INTERACTIVE.

After discussing the note and first verdict with the jury, the Court instructed the jury, "[t]hen what you need to do is eliminate the checkmarks and initial it, if you will, up here, and check that box in each place on this form, and initial it there,

39

and then we will have the verdict."[5]  Rather than following those instructions, the jury retired to "discuss things further."  Based on the instructions of the Court, the jury apparently believed that it did not have the option to find that Phillips and Mroz were not individually responsible for any damages – that to do so, would require a finding that Phillips and Mroz did not violate Sarbanes-Oxley.  Of course, such a conclusion – and any instruction or suggestion that this is law – would be improper, as a finding of causal damages is not an essential element of a claim under § 1514A.

        After discussing the issue with the jury in open court, the Court instructed the jury to change its verdict to reflect a finding in favor of Phillips and Mroz.  The jury did not follow those instructions and instead, returned to deliberate further. Because the jury did not follow these final instructions of the Court, the lower court should have either entered the verdict form in accord with its instructions or ordered a new trial.  Whether this was an abuse of discretion or plain error, it is clear that the second verdict was against the instructions of the court and the SouthPeak Defendants request that this Court either enter the verdict form in manner instructed by the Court or order a new trial on Count I.

---

[5] Trial Testimony, page 965, lines 15-22.

## CONCLUSION

WHEREFORE, the SouthPeak Defendants respectfully request the following relief:

a.    That this Court hold that the claims set forth under Count I are time barred by the two-year statute of limitations and are therefore dismissed;

b.    That this Court hold that the claims set forth against Phillips and Mroz under Count I have not been administratively exhausted and as such, the lower court did not have jurisdiction over those claims and they are therefore dismissed;

c.    That this Court hold that emotional damages are not available under § 1514A and that the emotional damage awards against Phillips and Mroz should therefore be struck and/or dismissed;

d.    That this Court hold that Jones did not present evidence to support emotional damages of $100,000 and that the emotional damages award should be reduced to no more than $5,000 against Phillips and $5,000 against Mroz; and/or

e.    That this Court hold that the first verdict the jury returned be entered as the judgment against the SouthPeak Defendants and that the subsequent verdict be invalidated, that the lower court be instructed to enter the jury verdict in accord with its specific instructions, or in the alternative, that a new trial be ordered.

Respectfully submitted,

SOUTHPEAK INTERACTIVE CORPORATION, TERRY M. PHILLIPS, AND MELANIE J. MROZ

By: _____ s/ _____

Kevin D. Holden, Esq. (VSB#30840)
Jackson Lewis P.C.
1021 East Cary Street, Ste 1200
Richmond, Virginia 23219
Tel: 804.212.2888
Fax: 804.649.0403
Kevin.Holden@jacksonlewis.com
*Counsel for Defendants*

## STATEMENT FOR ORAL ARGUMENT

The SouthPeak Defendants request oral argument on the issues raised in this

appeal.

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains 9,726 words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

s/ _____

Kevin D. Holden, Esq. (VSB#30840)
Jackson Lewis P.C.
1021 East Cary Street, Ste 1200
Richmond, Virginia 23219
Tel:  804.212.2888
Fax:  804.649.0403
Kevin.Holden@jacksonlewis.com
*Counsel for Defendants*

43

## CERTIFICATE OF FILING AND SERVICE

On the 18th day of April, 2014, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANTS with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

James B. Thorsen
MARCHANT, THORSEN, HONEY,
BALDWIN & MEYER, LLP
5600 Grove Avenue
Richmond, Virginia 23226
(804) 285-3888
jim@mthblaw.com
*Counsel for Appellee*

_____ s/ _____

Kevin D. Holden, Esq. (VSB#30840)
Jackson Lewis P.C.
1021 East Cary Street, Ste 1200
Richmond, Virginia 23219
Tel:  804.212.2888
Fax:  804.649.0403
Kevin.Holden@jacksonlewis.com
*Counsel for Defendants*

44

# ADDENDUM

*Ellis v. CommSCOPE, Inc.*,
    2008 U.S. Dist. LEXIS 70543 (N.D. Texas 2008)



THOMAS JEFFREY ELLIS, Plaintiff, VS. COMMSCOPE, INC. OF NORTH CAROLINA f/k/a COMMSCOPE
SOLUTIONS, INC., Defendant.

CIVIL ACTION NO. 3:07-CV-1938-G

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*2008 U.S. Dist. LEXIS 70543*

September 11, 2008, Decided
September 11, 2008, Filed

**COUNSEL:** [*1] For Thomas Jeffrey Ellis, Plaintiff: Kervyn B Altaffer, Jr, LEAD ATTORNEY, Sophia Katherine Palat, Legal Aid of NorthWest Texas, Dallas, TX.

For Commscope Inc of North Carolina, formerly known as Commscope Solutions Inc, Defendant: Buena Vista Lyons, LEAD ATTORNEY, Michael P Maslanka, Ford & Harrison, Dallas, TX.

**JUDGES:** A. JOE FISH, Senior United States District Judge.

**OPINION BY:** A. JOE FISH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of Thomas Jeffrey Ellis ("Ellis" or "the plaintiff") for leave to amend his original complaint to add CommScope, Inc. ("CommScope") as a defendant. For the reasons set forth below, the motion for leave to amend is granted.

**I. BACKGROUND**

The plaintiff is a components engineer who began work with CommScope, Inc. of North Carolina ("the defendant") in May of 2003. Plaintiff's First Amended Complaint ("Complaint") P 9. Sometime in October of 2006, Ellis discovered that the defendant had been misrepresenting the performance capabilities of its product. *Id.* P 12. The company's database revealed the product had a greater number of defects than the defendant had led its shareholders and the public to believe. *Id.* Upon making this discovery, Ellis contacted the defendant's [*2] Human Resource Manager, who launched an internal investigation. *Id.* PP 13-14. As part of the investigation, the defendant's attorney held a meeting with several officials, including Vice President Lou Adriaenssens. During this meeting, Adriaenssens admitted that only ninety percent of the defendant's products met the advertised standards. *Id.* PP 15-16. After the meeting, the Human Resource Manager e-mailed Ellis a copy of the minutes from the meeting for approval. Ellis responded that the minutes looked accurate. One hour later, he was fired. *Id.* PP 17-18.

The plaintiff brought this suit against the defendant for terminating him in violation of *18 U.S.C. § 1514A* ("*§ 1514A*"), the whistleblower provision of the Sarbanes-Oxley Act. On April 2, 2008, this court issued a scheduling order that required, *inter alia*, all motions for leave to amend to be filed by July 2, 2008. On that day, the plaintiff filed this motion for leave to amend his original complaint. The purpose of the amendment is to add CommScope as a defendant. Ellis argues that CommScope should be an additional defendant based on at least one of the following alternative theories: (1) the defendant was acting as an agent for [*3] CommScope; (2)

Ellis was actually an employee of CommScope, or at least a joint employee of the defendant and CommScope; (3) CommScope exercised enough control over the defendant to make it CommScope's alter ego; (4) the corporate veil of CommScope doing business under the defendant's name should be pierced; or (5) CommScope is a necessary party because it is the publicly traded parent corporation of the defendant. Plaintiff's First Motion for Leave to Amend and File First Amended Complaint and Brief in Support ("Motion for Leave to Amend") at 5-8. The defendant opposes this motion on two grounds: (1) that allowing the amendment would be futile, and (2) that the amendment is not timely.

**II. ANALYSIS**

**A.** *Rule 20(a)* Standard to Add a Defendant

The general standard on whether a plaintiff may add a defendant comes from *Federal Rule of Civil Procedure 20(a)*. This rule states that a plaintiff may join in any civil action all persons against whom he has a claim if there is any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences and if there is any question of law or fact common to all defendants. *FED. R. CIV. P. 20(a)*. The parties agree that [*4] this standard is met here. However, when a plaintiff fails to join all parties under *Rule 20(a)* in his first complaint (or in his complaint as amended by right), leave of the court must be obtained to join such additional persons. *FED. R. CIV. P. 15(a)*; see also *Wheat v. Mass, 994 F.2d 273, 277 (5th Cir. 1993)* (affirming the district court's decision denying leave to join additional defendants). It is here that the parties disagree. The defendant argues that the court should deny leave to amend under *Rule 15(a)*.

**B.** *Rule 15(a)* Standard to Amend an Original Complaint

*Federal Rule of Civil Procedure 15(a)* provides that "a party may amend [the party's] pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *FED. R. CIV. P. 15(a)*; see also *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)* ("[L]eave to amend 'shall be freely given when justice so requires.'"). Whether a motion to amend should be granted is within the discretion of the district court. *Id. at 182*. When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure [*5] to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc . . . ." *Overseas Inns S.A.P.A. v. United States, 911 F.2d 1146, 1150-51 (5th Cir. 1990)* (quoting *Foman, 371 U.S. at 182*). The Fifth Circuit, however, has stated that "'discretion' may be a misleading term, for *rule 15(a)* severely restricts the judge's freedom" to deny leave to amend. *Dussouy v. Gulf Coast Investment Corporation, 660 F.2d 594, 597 (5th*

2008 U.S. Dist. LEXIS 70543, *

*Cir. 1981)*. *Rule 15(a)* "evinces a bias in favor of granting leave to amend." *Id.* Thus, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 598.

**C. The Defendant's *Rule 12(b)(6)* Arguments**

In its attempt to demonstrate that a substantial reason to deny leave to amend exists in this case, the defendant offers two arguments. The first is that the proposed amended complaint is futile because it will fail to state a claim upon which relief can be granted. Defendant's Response in Opposition to Plaintiff's First Motion for Leave to Amend and File First Amended Complaint and Brief in Support [*6] ("Response") at 1-3. The Fifth Circuit has stated that "While this court has not specifically defined 'futility' in [the *Rule 15(a)*] context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief can be granted." *Stripling v. Jordan Production Company, 234 F.3d 863, 873 (5th Cir. 2000)*. Thus, if the defendant can show that the proposed amended complaint would be subject to dismissal under *F.R. CIV. P. 12(b)(6)* for failure to state a claim on which relief could be granted, the motion for leave to amend should be denied as futile. *Id.*

**1. The *Rule 12(b)(6)* Standard**

"To survive a *Rule 12(b)(6)* motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007)* (quoting *Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007))*, *cert. denied, ___ U.S. ___, 128 S.Ct. 1230, 170 L. Ed. 2d 63 (2008)*. "While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than [*7] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 127 S.Ct. at 1964-65* (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal, 495 F.3d at 205* (quoting *Twombly, 127 S.Ct. at 1965)*. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004))*.

**2. The Defendant's *Rule 12(b)(6)* Argument as to Scienter**

The defendant alleges that Ellis's proposed amended complaint fails to state a claim upon which relief can be granted for two reasons. The first is that Ellis has not properly pled scienter, an essential element of his claim under *§ 1514A*, the whistleblower provision of Sarbanes-Oxley. Response at 1-2, citing *Allen v. Administrative Review Board, United States DOL, 514 F.3d 468, 479-80 (5th Cir. 2008)*. The elements of a *§ 1514A* claim are "(1) [*8] [the employee] engaged in protected activity; (2) the employer knew that [] he engaged in the protected activity; (3) [] he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Allen, 514 F.3d at 475-76*. For a plaintiff's activity to be protected activity within the meaning of the first element, the conduct he reports must be the type of conduct Sarbanes-Oxley forbids. More specifically, the "employee's complaint must 'definitively and specifically relate' to one of the six enumerated categories found in *§ 1514A*." *Id. at 476* (quoting *18 U.S.C. §1514A)*. The conduct Ellis reported falls into the sixth category, which deals with fraud against shareholders. *Id.* A category six violation requires proof of scienter. *Allen, 514 F.3d at 479-80*. Thus, for an employee who reports category six behavior to be protected by *§ 1514A*, "the employee must reasonably

believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders." *Id. at 480*.

The defendant argues that Ellis's proposed amended complaint fails to properly plead scienter because it does not allege any [*9] facts constituting intentional deceit. Response at 2. The defendant complains that the only reference Ellis makes to scienter is this sentence: "Ellis reasonably believed that the false performance claims were made with the intent to deceive Defendants' shareholders and the public." *Id.* The defendant claims this sentence baldly asserts the existence of scienter without alleging any facts to support it. This type of naked pleading, it argues, fails to meet *Twombly's* heightened pleading standards which require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly, 127 S.Ct. at 1964-65 (2007)*.

This argument is flawed. At this stage of the case, Ellis is not required to show that CommScope acted with scienter. Response at 3. Instead, he merely needs to plead facts showing he had a reasonable *belief* that CommScope acted with scienter. *Allen, 514 F.3d at 480* (stating that "the employee must reasonably believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud the shareholders"). The proposed amended complaint asserts facts that support a reasonable belief that the defendant was acting [*10] with intent to deceive or defraud the shareholders. First, Ellis pleads that he discovered evidence that the defendant was misrepresenting the quality of its products. It was not until after Ellis "blew the whistle" on this conduct that the vice president of the company finally confessed to the deceit. Plaintiff's Reply at 2. Furthermore, almost immediately after the defendant's falsehoods came to light, Ellis -- who was responsible for the exposure -- was fired. *Id.* While these facts are hardly definitive proof of scienter, the court must, in the context of *Rule 12(b)(6)*, view them in the light most favorable to the plaintiff. When viewed in this way, these facts are more than a mere "formulaic recitation of the elements of a cause of action." *Twombly, 127 S.Ct. at 1964-65*. At the least, these facts support a reasonable belief that there was such a scheme, which is all that is necessary. At the *Rule 12(b)(6)* stage, all Ellis must do is demonstrate beyond a merely speculative level that he held a reasonable belief the defendant acted with scienter. *Katrina Canal, 495 F.3d at 205; Allen, 514 F.3d at 480*. He has done so.

**3. The Defendant's *Rule 12(b)(6)* Argument That CommScope Did [*11] Not Employ Ellis**

The defendant's next argument is that CommScope never employed Ellis and was thus not involved in firing him. It argues that CommScope never handled "day-to-day business operations, and, thus, could not have been involved in the management or employment relations" of the defendant. Response at 4. Any argument to the contrary, it asserts, is merely conclusory and does not meet the *Rule 12(b)(6)* standard. *Id.*

In response, Ellis points out that the defendant's own attorney identified Richard Mei, Dan Bertoncini, Luc Adriaenssens, and Randall Crenshaw as the persons who decided to terminated Ellis. All these individuals are identified in the sworn affidavits of Richard Mei and Luc Adriaenssens as employees of CommScope, not the defendant. Plaintiff's Reply at 5. Moreover, there is an Employee Confidentiality Agreement between Ellis and CommScope. *See* Exhibit A to Plaintiff's Motion to Amend. There is no such agreement between Ellis and the defendant.

At this juncture, the court must view the facts in the light most favorable to the plaintiff. *Katrina Canal, 495 F.3d at 205*. Moreover, Ellis only needs to prove his right to relief beyond a merely speculative level. *Id.* (citing [*12] *Twombly, 127 S.Ct. at 1965)*. The facts pled here, which the court must take as true, show that CommScope officials terminated Ellis, and that there is an em-

2008 U.S. Dist. LEXIS 70543, *

ployment agreement between the two. These facts give rise to more than mere speculation that CommScope employed Ellis.

C. The Defendant's Timeliness Argument

The defendant's final argument is that Ellis did not file suit against CommScope within the amount of time allowed by *§ 1514A(b)(1)(B)*. Response at 3-4. This section provides that a person alleging a violation of *§ 1514A(a)* may seek relief by either filing a complaint with the Secretary of Labor, or, if the Secretary does not issue a final decision within 180 days of filing the complaint, by bringing an action for *de novo* review in a federal district court. *18 U.S.C. §1514A(b)*. If the complainant intends to remove to federal court, he must first file notice of his intent to do so with the administrative law judge or the Board. *29 C.F.R. § 1980.114(b)*. The complainant must provide this notice fifteen days before filing a complaint in federal court. *Id.*

Ellis complied with all these requirements. He filed his initial complaint under *§ 1514A* with the U.S. Department of Labor on March [*13] 6, 2007. Plaintiff's Original Complaint P 16. The Secretary of the Department of Labor did not issue a final decision within 180 days. *Id.* P 19. On November 2, 2007, Ellis provided his 15-day notice to the Secretary that he intended to remove to federal court. *Id.* Instead of removing the complaint against CommScope, however, Ellis first filed a new cause of action against the defendant in federal court. That complaint was filed on November 17, 2007. Ellis now wishes to add CommScope.

The defendant asserts that if Ellis wanted to sue CommScope in federal court, he had to do so "promptly after the expiration of the 15-day notice period." Response at 4. According to the defendant, the delay between November 2, 2007 (when Ellis provided his 15-day notice) and July 2, 2008 (when he filed his motion for leave to amend his complaint) means that the suit against CommScope is not "prompt" and therefore untimely. *Section 1514A(b)(1)(B)*, however, does not require the complainant to file his claim in federal court "promptly" after giving notice to the administrative law judge or the Board.\* The only time constraint on Ellis's suit against CommScope is the relevant statute of limitations. Under [*14] the Sarbanes-Oxley Act of 2002, fraud claims may be brought no later than the earlier of (1) two years after the discovery of the facts constituting the claim; or (2) five years after such violation. *28 U.S.C. § 1658(b)(1)&(2)*. Ellis discovered the facts constituting the alleged violation in October of 2006. Original Complaint PP 7-9. Ellis filed his motion for leave to amend in order to add CommScope on July 2, 2008. His claims against CommScope are therefore timely.

> \*    *18 U.S.C. 1514A(b)* provides: "A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c) by -- (A) filing a complaint with the Secretary of Labor; or (B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy."

> There is no requirement or even reference as to when the complainant must file his complaint in the district court [*15] after giving his fifteen day notice to the Board or administrative law judge.

III. CONCLUSION

For the reasons stated above, the plaintiff's motion for leave to file an amended complaint is **GRANTED**.

**SO ORDERED.**

September 11, 2008.

/s/ A. Joe Fish

A. JOE FISH

Senior United States District Judge