RECORD NO. 13-2399

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

───────────────

ANDREA GAIL JONES,

*Plaintiff - Appellee,*

v.

SOUTHPEAK INTERACTIVE CORPORATION OF DELAWARE,
TERRY M. PHILLIPS and MELANIE J. MROZ,

*Defendants - Appellants.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND
(HON. ROBERT E. PAYNE, SENIOR, PRESIDING JUDGE)

───────────────

**BRIEF OF APPELLEE**

───────────────

James B. Thorsen
MARCHANT, THORSEN, HONEY,
BALDWIN & MEYER, LLP
5600 Grove Avenue
Richmond, Virginia 23226
(804) 285-3888
jim@mthblaw.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2399     Caption: Andrea Jones v. Southpeak Interactive Corp., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Andrea Jones
(name of party/amicus)

who is       Appellee      , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?    ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: ___January 16, 2014___

Counsel for: Andrea Jones _____

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___January 16, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____    ___January 16, 2014___
(signature)                                               (date)

- 2 -

# <u>TABLE OF CONTENTS</u>

Page

CORPORATE DISCLOSURE

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES.......................................................................5

STATEMENT OF THE CASE...........................................................................6

    I.      RELEVANT FACTUAL BACKGROUND ............................................6

    II.     PROCEDURAL HISTORY ..................................................................13

SUMMARY OF THE ARGUMENT ...............................................................18

STANDARD OF REVIEW ..............................................................................20

ARGUMENT ....................................................................................................21

    I.      THE FOUR-YEAR STATUTE OF LIMITATIONS SET FORTH AT 28 U.S.C. § 1658(a) APPLIES TO WHISTLEBLOWER CLAIMS UNDER THE SARBANES-OXLEY ACT ........................................................................................21

          A.    The Plain Language of § 1658(b)(1) Does Not Support an Application to Whistleblower Claims Under 18 U.S.C. § 1514A ......................................................................................23

          B.    An Employee is Not Required to Prove Fraud Under 18 U.S.C. § 1514A, Therefore, 28 U.S.C. § 1658(b) Does Not Apply to Whistleblower Claims Under 18 U.S.C. § 1514A ..........28

    II.     JONES EXHAUSTED HER ADMINISTRATIVE REMEDIES AGAINST PHILLIPS AND MROZ.....................................................31

          A.    The Administrative Complaint Afforded OSHA the Opportunity to Resolve the Allegations Against Phillips and Mroz Administratively ..................................................34

i

B.      The Administrative Complaint Placed Phillips and Mroz on Notice They May Be Named in This Action...................................36

III.    THE COMPENSATORY DAMAGES AWARDS AGAINST PHILLIPS AND MROZ ARE PROPER UNDER 18 U.S.C. § 1514A(c) AND NOT EXCESSIVE .......................................................38

A.      Emotional Damages are Available under 18 U.S.C. § 1514A(c) ......................................................................................38

B.      The District Court Did Not Abuse its Discretion by Finding Jones Presented Sufficient Evidence to Support a Compensatory Damages Award of $100,000.00............................44

VI.     THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY UPON RECEIPT OF AN INCONSISTENT VERDICT............52

A.      The District Court Did Not Abuse its Discretion in Instructing the Jury Following Receipt of the First Jury Verdict ...........................................................................................53

B.      The Second Verdict is Not Inconsistent and, Therefore, the District Court Did Not Abuse its Discretion ...................................55

C.      The Jury Did Not Exceed the Instructions of the District Court .................................................................................................57

CONCLUSION....................................................................................................58

REQUEST FOR ORAL ARGUMENT ....................................................................59

CERTIFICATE OF COMPLIANCE..........................................................................60

CERTIFICATE OF SERVICE ................................................................................61

ii

## TABLE OF AUTHORITIES

### CASES

*In re Alstom SA Securities Litigation*,
    406 F. Supp. 2d 402 (S.D.N.Y. 2005) ............................................29

*Asdale v. International Game Tech.*,
    No. 3:04-cv-00703-RAM (D. Nev. May 24, 2011)........................39

*Barati v. Metropolitan-North R.R. Commuter R.R. Co.*,
    Civ. No. 3:10cv1756 (D. Conn. Mar. 22, 2013)............................42

*Bozeman v. Per-Se Technologies, Inc.*,
    456 F. Supp. 2d 1282 (N.D. Ga. 2006)..........................................32

*Bridges v. McDonald's Corp.*,
    Case No. 09-cv-1880 (N.D. Ill. Dec. 21, 2009)...............................31

*Brown v. Lockheed Martin Corporation*, 2008-SOX-049 (ALJ Jan. 15,
    2010), *aff'd*, ARB No. 10-050 (ARB Feb. 28, 2011), *aff'd*, 717 F.3d
    1121 (10th Cir. 2013) ....................................................................41

*Bryant v. Aiken Reg'l Medical Ctrs., Inc.*,
    333 F.3d 536 (4th Cir. 2003) .........................................................48

*Christensen v. Harris Cnty.*,
    529 U.S. 576, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ..............41

*Cline v. Wal-Mart Stores, Inc.*,
    144 F.3d 294 (4th Cir. 1998) ............................................21, 44, 51

*Conn. Nat'l Bank v. Germain*,
     503 U.S. 249, 112 S.Ct. 1146 (1992) ............................................23

*Dennis v. Columbia Colleton Medical Center, Inc.*,
    290 F.3d 639 (4th Cir. 2002) .........................................................51

*Ellis v. CommSCOPE, Inc.*,
    No. 3:07-CV-1938, 2008 WL 4191482 (N.D. Tex. Sept. 11, 2008)...............26

*Fairmount Glass Works v. Cub Fork Coal Co.*,
    287 U.S. 474 (1933)..................................................................52, 53

*Feldman v. Law Enforcement Associates Corp.*,
    No. 13-1849 (4th Cir. May 12, 2014)............................................39

*Genberg v. Porter*,
    935 F. Supp. 2d 1094 (D. Colo. 2013) ...........................................31

*Hammond v. Northland Counseling Center, Inc.*,
    218 F.3d 886 (8th Cir. 2000) .........................................................43

*Hanna v. WCI Communities, Inc.*,
    348 F. Supp. 2d 1332 (S.D. Fla. 2004).........................................39

*Hanna v. WCI Communities, Inc.*,
    No. 04-80595, 2004 WL 6072492 (S.D. Fla. Nov. 29, 2004)...................32, 33

*Hemphill v. Celanese Corp.*,
    Civ. Action No. 3:08-cv-2131-B (N.D. Tex. Sept. 14, 2009) ........................40

*Hetzel v. County of Prince William*,
    89 F.3d 169 (4th Cir. 1996) ......................................................45, 51

*Hines v. IBG International, Inc.*,
    813 F.2d 1331 (4th Cir. 1987) ..................................................53, 55

*Ingle ex rel. Estate of Ingle v. Yelton*,
    439 F.3d 191 (4th Cir. 2006) .......................................................52

*JDS Uniphase Corp. v. Jennings*,
    473 F. Supp. 2d 705 (E.D. Va.  2007) .................................28, 29, 31

*Jones v. Home Fed. Bank*,
    No. CV09-336-CWD, 2010 WL 255856 (D. Idaho Jan. 14, 2010) ...............40

*Jordan v. Sprint Nextel Corp.*,
    Case No. 12-2573 (D. Kan. Mar. 11, 2014) .............................22, 26

*Kalkunte v. DVI Finance Services Inc.*,
ARB No. 05-139, 2004-SOX-056 (ARB Feb. 27, 2009) ...............................41

*Knussman v. State of Maryland*,
272 F.3d 625 (4th Cir. 2001) .........................................................................45

*Kolomick v. United Steelworkers of America, District 8*,
762 F.2d 354 (4th Cir. 1985) .........................................................................28

*Ladnier v. Murray*,
769 F.2d 195 (4th Cir. 1985) .........................................................................53

*Lavoie v. Pacific Press & Shear Co.*,
975 F.2d 48 (2d Cir. 1992) .............................................................................53

*Livingston v. Wyeth, Inc.*,
520 F.3d 344 (4th Cir. 2008) .........................................................................30

*Lockheed Martin Corp. v. Brown*,
717 F.3d 1121 (10th Cir. 2013) ......................................................38, 39, 43

*Mahony v. KeySpan Corp.*,
No. 04-cf-554-SJ, 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007)...................39

*Menendez v. Halliburton, Inc.*,
ARB No. 12-026, 2007-SOX-005 (ARB Mar. 15, 2013) ..............................41

*Merck & Co., Inc. v. Reynolds*,
130 S. Ct. 1784 (2010).....................................................................................24

*Minor v. Bostwick Laboratoriess, Inc.*,
669 F.3d 428 (4th Cir. 2012) .........................................................................41

*Morrison v. MacDermid, Inc.*,
No. 07-cv-01535, 2008 WL 4293655 (D. Colo. Sept. 16, 2008)........33, 34, 36

*Murray v. TXU Corp.*,
Civ. Action No. 3:03-CV-0888-P, 2005 WL 1356444
(N.D. Tex. June 7, 2005) .................................................................................40

v

*Neal v. Honeywell, Inc. & Alliant Tech. System*,
191 F.3d 827 (7th Cir. 1999) ...........................................................43

*Price v. City of Charlotte, N.C.*,
93 F.3d 1241 (4th Cir. 1996) ...................................................... 44-45

*Richmond, Fredricksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ..........................................................20

*Robinson v. Wix Filtration Corp. L.L.C.*,
599 F.3d 403 (4th Cir. 2010) ....................................................21, 52

*Schmidt v. Levi Strauss & Co.*,
621 F. Supp. 2d 796 (N.D. Cal. 2008) ...........................................40

*Skidmore v. Swift & Co.*,
323 U.S. 134, 65 S.Ct. 161 (1944) ..................................................41

*Smith v. Corning Inc.*,
No. 06-cv-6516 (W.D. N.Y. July 23, 2007) ...................................32

*Smith v. Psychiatric Solutions, Inc.*,
No. 3:08-cv-3, 2009 WL 903624 (N.D. Fla. Mar. 31, 2009) .........31

*Stone v. Instrumentation Laboratory Co.*,
591 F.3d 239 (4th Cir. 2009) ...........................................20, 23, 27

*Trent v. Bolger*,
837 F.2d 657 (4th Cir. 1988) ..........................................................28

*United States v. Kubrick*,
444 U.S. 111, 100 S. Ct. 352 (1979) ..............................................24

*Vieques Air Link, Inc. v. U.S. Department of Labor*,
437 F.3d 102 (1st Cir. 2006)......................................................42, 44

*Walton v. Nova Information System*,
514 F. Supp. 2d 1031 (E.D. Tenn. 2007) .......................................40

*Weihua Huang v. Rector and Visitors of University of Virginia*,
    No. 3:11-cv-50, 2013 WL 865845 (W.D. Va. Mar. 7, 2013).........................46

*Welch v. Chao*,
    536 F.3d 269 (4th Cir. 2008) .....................................................................29, 30

*Zhang v. America Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir. 2003) .........................................................................53

## STATUTES

15 U.S.C. 78c (a)(47) ...........................................................................................22
18 U.S.C. § 1514A ........................................................................................*Passim*
18 U.S.C. § 1514A(a)(1) .......................................................................................22
18 U.S.C. § 1514A(b)(1)(A) ..................................................................................22
18 U.S.C. § 1514A(b)(1)(B) ...............................................................................5, 22
18 U.S.C. § 1514A(b)(2) ..................................................................................42, 44
18 U.S.C. § 1514A(b)(2)(D) .........................................................................2, 22, 31
18 U.S.C. § 1514A(c) ....................................................................................*Passim*
18 U.S.C. § 1514A(c)(1) .......................................................................................38
18 U.S.C. § 1514A(c)(2) .......................................................................................38
28 U.S.C. § 1291 ....................................................................................................5
28 U.S.C. § 1331 ....................................................................................................1
28 U.S.C. § 1658 .............................................................................14, 20, 23, 28
28 U.S.C. § 1658(a) ......................................................................................*Passim*
28 U.S.C. § 1658(b) ............................................................18, 22, 28, 29, 30
28 U.S.C. § 1658(b)(1) ..................................................................................*Passim*
31 U.S.C. § 3730 ..................................................................................................42
42 U.S.C. § 5851 ..................................................................................................42
49 U.S.C. § 20109 ................................................................................................42
49 U.S.C. § 42121(b) ...........................................................................................44

29 C.F.R. § 1980.103(b) ..........................................................................31, 33, 36
29 C.F.R. § 1980.103(d) .......................................................................................31
29 C.F.R. § 1980.104(e)(2) ..................................................................................29

Fed. R. Civ. P. 49(b)(3)..............................................................................20, 53, 54
Fed. R. Civ. P. 49(b)(3)(B) .........................................................................53, 55

## OTHER AUTHORITIES

*Dodd-Frank Wall Street Reform and Consumer Protection Act*,
Pub. L. No. 111, 124 Stat. 1376
(July 21, 2010) ..................................................................................2

*Public Company Accounting Reform and Investor Protection Act of 2002*,
Pub. L. No. 107, 116 Stat. 745 (July 30, 2002) ..............................................23

OSHA WHISTLEBLOWER INVESTIGATIONS MANUAL, (Sept. 20, 2011) .............41, 43

## JURISDICTIONAL STATEMENT

On June 18, 2012, Plaintiff-Appellee, Andrea Gail Jones ("Jones"), by counsel, filed a Complaint in the United States District Court for the Eastern District of Virginia (the "District Court") against Defendants-Appellees, SouthPeak Interactive Corporation of Delaware ("SouthPeak"), Terry M. Phillips ("Phillips"), and Melanie J. Mroz ("Mroz") (collectively, "Defendants"). (J.A. 29.) Count I of the Complaint alleged a cause of action against Defendants under the Sarbanes-Oxley Act of 2002, as amended, 18 U.S.C. § 1514A (the "Sarbanes-Oxley Act"). (J.A. 48-49.)

The District Court had subject-matter jurisdiction over Count I of the Complaint pursuant to 28 U.S.C. § 1331 because Count I arises under the Sarbanes-Oxley Act, a law of the United States. (J.A. 31.) In addition, the District Court had subject-matter jurisdiction over all claims asserted in Count I, including the individual claims asserted against Phillips and Mroz, as Jones fully exhausted her administrative remedies under the Sarbanes-Oxley Act against all three Defendants. (J.A. 739-44, 757.)

On October 5, 2009, Jones, by counsel, filed an administrative complaint (the "administrative complaint") with the United States Department of Labor (the "DOL"), providing a copy of the administrative complaint to the office of the Occupational Safety and Health Administration (the "OSHA") Regional

1

Administrator.  (J.A. 31, 173.)  Jones timely filed the administrative complaint within ninety (90) days of her termination on August 14, 2009, pursuant to 18 U.S.C. § 1514A(b)(2)(D).[1]  (*See* J.A. 212-13.)  The administrative complaint is a three-page letter with three exhibits attached, totaling thirty-one (31) pages, including an enforcement complaint Jones filed with the Securities and Exchange Commission ("SEC") on August 12, 2009, detailing the alleged employment retaliation by Defendants in violation the Sarbanes-Oxley Act.  (*See* J.A. 173-203.)  The caption of the administrative complaint provides, in full, "Whistleblower Complaint of Andrea Jones under Section 806 of the Sarbanes-Oxley Act of 2002, as amended, 18 United States Code Section 1514A (the 'Act'), and 29 C.F.R. 1980.103." (J.A. 173.)  The introduction of the administrative complaint states:

> This firm represents Andrea Jones, formerly CFO of SouthPeak Interactive Corporation ("SouthPeak"), a reporting company under Section 13 of the Securities Exchange Act of 1934.
>
> On August 14, 2009, in a clear violation of the Act, SouthPeak terminated Ms. Jones' employment, apparently in retaliation for Ms. Jones attempts to correct statements in periodic reports filed, and proposed to be filed, by SouthPeak under Section 13.  In accordance with the above referenced section of the Act, Ms. Jones therefore states the following in support of her whistleblower claim.  The **bold**

---

[1] Section 922(c) of the Dodd-Frank Wall Street Reform and Consumer Protection Act amended 18 U.S.C. § 1514A(b)(2)(D) of the Sarbanes-Oxley Act by increasing the administrative statute of limitations from 90 to 180 days and inserting the language ", or after the date on which the employee became aware of the violation."  *See Dodd-Frank Wall Street Reform and Consumer Protection Act*, Pub. L. No. 111-203, § 922(c)(1)(A), 124 Stat. 1376, 1848 (July 21, 2010).  Hereafter, this brief will cite the administrative statute of limitations as 90 days.

paragraphs correspond to the numbered items in the OSHA Fact Sheet.

(J.A. 173 (emphasis in original).)  The first bold paragraph provides the name and address of Jones.  (J.A. 173.)  The second bold paragraph, located on the second page, states, in full:

> **The names and addresses of the company(s) and person(s) who are alleged to have violated the Act (who the complaint is being filed against):**
>
> > SouthPeak Interactive Corporation
> > 2900 Polo Parkway.
> > Midlothian, VA 23113
> > 804-378-5100
> >
> > **Terry Phillips, Chairman of the Board**
> > Patrice Strachan, Vice President of Operations
> > **Melanie Mroz, Chief Executive Officer**

(J.A. 174 (emphasis added to names of Phillips and Mroz).)

On October 16, 2009, OSHA notified SouthPeak of the administrative complaint, naming Phillips as the contact person.  (*See* J.A. 430-36.)  Following October 16, 2009, counsel for SouthPeak discussed the administrative charge process, the substantive allegations of the administrative complaint, and SouthPeak's factual position in response to those allegations with Phillips and Mroz.  (*See* J.A. 595, 624.)  Further, Phillips was the main contact at SouthPeak for counsel for SouthPeak.  (J.A. 596.)

On April 1, 2010, Susan Owen ("Owen"), Regional Investigator for OSHA, conducted an investigation of the administrative complaint and interviewed numerous employees of SouthPeak, including Phillips and Mroz. (*See* J.A. 597, 625-26.)

On July 23, 2010, counsel for Jones notified William H. Yost, Regional Supervisory Investigator of the DOL, of Jones' intent to withdraw the administrative complaint and proceed in district court. (J.A. 532.) Jones, by counsel, subsequently served Defendants and the DOL with advance fifteen (15) day written notice of her intent to pursue this matter in district court by letter dated August 20, 2010. (*See* J.A. 31, 437, 450.) Jones, by counsel, originally sent the notice of intent to file dated August 20, 2010 by certified mail of the same date with a distribution list including counsel for SouthPeak. (*See* J.A. 437-40.) On September 2, 2010, however, Jones, by counsel, resent an amended distribution list attached to the August 20, 2010 notice of Jones' intent to file by certified mail, including Phillips and Mroz. (*See* J.A. 450-52, 461-64.) The assistant of counsel for Jones e-mailed the same amended distribution list to counsel for SouthPeak on September 2, 2010. (*See* J.A. 467-69.)

By letter dated August 23, 2010, the DOL notified counsel for Jones of the dismissal of the administrative complaint, pursuant to the notice of Jones' intent to proceed in district court dated August 20, 2010. (*See* J.A. 525.)

4

Jones filed this action in the District Court after more than 180 days passed since Jones filed the administrative complaint without the issuance of a final decision by the Secretary of Labor, pursuant to 18 U.S.C. § 1514A(b)(1)(B). (J.A. 31.)

The United States Court of Appeals for the Fourth Circuit (this "Court") has jurisdiction over this appeal from the Final Judgment Order of the District Court, issued on November 21, 2013, pursuant to 28 U.S.C. § 1291. (*See* J.A. 2118.) The Final Judgment Order disposes of all parties' claims, with Jones' Petition for Attorneys' Fees and Costs the only remaining issue before the District Court.

Defendants timely filed an Amended Notice of Appeal on November 27, 2013. (J.A. 2122.)

## STATEMENT OF THE ISSUES

1.     Does the four-year statute of limitations set forth at 28 U.S.C. § 1658(a) or the two-year statute of limitations set forth at 28 U.S.C. § 1658(b)(1) apply to actions filed in federal court under 18 U.S.C. § 1514A when the plain language of 28 U.S.C. § 1658(b)(1) contemplates a "discovery" particular to fraud cases and an action under 18 U.S.C. § 1514A is not a claim that involves proving fraud?

2.     Did Jones exhaust her administrative remedies against Phillips and Mroz when "[n]o particular form of complaint is required" under 18 U.S.C. §

5

1514A and Jones' administrative complaint clearly and obviously named Phillips and Mroz as "**person(s) who are alleged to have violated the Act (who the complaint is being filed against)**"?

3.    Are emotional damages available under 18 U.S.C. § 1514A(c) when the statute provides a prevailing employee "all relief necessary to make the employee whole," and, if so, did the District Court abuse its discretion by finding Jones presented sufficient evidence to support a compensatory damages award of $100,000.00?

4.    Did the District Court abuse its discretion in (1) instructing the jury following receipt of the first jury verdict and after receipt of the note, without objection by defense counsel and upon agreement of defense counsel; (2) accepting the second verdict form following a poll of the jury; and (3) refusing to enter the verdict form in a manner instructed by the District Court or order a new trial?

## STATEMENT OF THE CASE

## I.    RELEVANT FACTUAL BACKGROUND

Jones is a Certified Public Accountant with extensive experience in public accounting.  (*See* J.A. 32, 1156-57)  On or about June 20, 2007, SouthPeak Interactive, L.L.C., a company who designs, develops, and distributes computer and video games, hired Jones.  (*See* J.A. 33, 1157)  Thereafter, on or about October

30, 2007, SouthPeak Interactive, L.L.C. promoted Jones to the position of interim Chief Financial Officer ("CFO").  (*See* J.A. 33, 1160.)

On May 12, 2008, Global Services Partners Acquisition Corp. ("GSPAC"), a publicly traded special purpose acquisition corporation, acquired all of the membership interests in SouthPeak Interactive, L.L.C.  (*See* J.A. 33.)  Due to this acquisition, SouthPeak Interactive, L.L.C. became a subsidiary of a public company and GSPAC changed its name to SouthPeak Interactive Corporation. (*See* J.A. 33, 1162.)  The same day, SouthPeak's Board of Directors appointed Jones as CFO of SouthPeak.  (*See* J.A. 33, 1162)

At this time, Phillips was Chairman of the Board of Directors of SouthPeak and the majority shareholder of SouthPeak, (*see* J.A. 32, 1419), and Mroz was President and Chief Executive Officer of SouthPeak, (*see* J.A. 32, 1415.)

In February 2009, Phillips and Mroz agreed Phillips would advance $307,400.00 of his personal funds to enable SouthPeak, which lacked sufficient funds and accessible lines of credit at that time, to purchase 50,400 units of a computer game entitled "My Baby Girl" from Nintendo (the "inventory").  (*See* J.A. 35.)

At this time, Patrice Strachan ("Strachan"), Vice President of Operations for SouthPeak, was responsible for ensuring the proper recording of accounts payable in SouthPeak's books and records.  (J.A. 35.)  With Strachan out of the office, on

7

February 13, 2009, Karen Josephsen ("Josephsen"), at Phillips' direction, sent a wire transfer of Phillips' personal funds to Nintendo in payment for the inventory (the "payment"). (*See* J.A. 35, 1086.) Josephsen did not record the payment on the books of the company as a payable or as any other liability or charge. (*See* J.A. 35, 1091.) When Strachan returned to the office, Josephsen informed Strachan the payment was made with Phillips' personal funds and gave Strachan the appropriate information to book the transaction. (*See* J.A. 35, 1091.)

The next month, March 2009, Eric Bradford ("Bradford"), Director of Operations of SouthPeak, learned SouthPeak received the inventory and asked Strachan how SouthPeak paid for the inventory. (J.A. 35-36.) Strachan informed Bradford that Phillips paid for the inventory personally and Strachan further directed Bradford not to tell anyone else in the company about the transaction, including Jones. (*See* J.A. 36, 1176-77.)

On May 15, 2009, SouthPeak filed its quarterly financial report to the Securities and Exchange Commission ("SEC"), which reflected the inventory, but did not reflect the cost of purchasing the inventory. (*See* J.A. 36, 1178.)

In late May 2009, Jones learned about the payment of Phillips' personal funds to purchase the inventory and Strachan's directive not to reveal the payment to Jones. (*See* J.A. 37, 1175-77.) Based on her discussions and subsequent

8

investigations in late May and early June,[2] Jones reasonably believed the failure to report the payment and the efforts to withhold the payment from Jones represented an intentional attempt to inflate SouthPeak's reported profits. (*See* J.A. 37, 1178-82, 1185-91, 1217-21.)

On June 8, 2009, Jones notified David Buckel ("Buckel"), in his capacity as Chairman of the Audit Committee of SouthPeak's Board of Directors (the "Audit Committee"), about the unreported payment and the incorrect accounting treatment of both the payment and the inventory. (*See* J.A. 38, 1227, 1236-40.) Further, Jones relayed to Buckel she reasonably believed such activity represented intentional efforts by Defendants, Strachan, and possibly others to overstate SouthPeak's reported profits and to conceal the payment. (*See* J.A. 38, 1238-40.)

Over the next two months, Jones made numerous reports about the financial irregularity to the Audit Committee and SouthPeak's outside counsel, none of which led to any remedial action. (*See* J.A. 38-44, 1243-47, 1259-67.) At this time, SouthPeak began preparing an amended quarterly report. (*See* J.A. 40, 1251.)

On August 3, 2009, SouthPeak's outside counsel provided Jones with draft language for the amended quarterly report stating the need to restate the consolidated financial statements was not the result of fraud or intentional

---

[2] Jones was further aware of a prior cease and desist order issued against Phillips by the SEC in May 2007. (*See* J.A. 1221.)

9

wrongdoing on the part of any directors, officers, or other employees of SouthPeak. (*See* J.A. 42, 1266-68.) As CFO of SouthPeak, Jones' signature was necessary to file the amended quarterly report. (J.A. 1268-69.)

On August 12, 2009, Jones notified the Enforcement Division of the SEC of the aforementioned facts and circumstances, stating she believed the conduct of Defendants may have violated anti-fraud securities laws.[3] (J.A. 45.)

On August 13, 2009, Jones sent an e-mail with a letter attached to SouthPeak's outside counsel stating she is unable to sign the amended quarterly report with the aforementioned language. (*See* J.A. 1271-74.)

Later that same day, SouthPeak had a special meeting of the Board of Directors in which the Board of Directors, including Phillips and Mroz, voted to terminate Jones. (*See* J.A. 1417-18, 1426.) The next day, on August 14, 2009, Mroz informed Jones of her termination. (*See* J.A. 45, 1276, 1418.)

Jones described the months "since discovering about the cover up that had occurred and the suspected fraud" as an "extremely stressful situation" and she "felt like [she] was working for the mob." (J.A. 1278.) Jones "didn't know what to do" and "she was scared." (J.A. 1405; *see also* J.A. 1278.)

---

[3] On April 20, 2011, the SEC issued a cease-and-desist order and civil penalty against SouthPeak and Strachan arising from the facts and circumstances of Jones' enforcement complaint with the SEC. (*See* J.A. 867-73.)

Following her termination, at first, Jones was relieved.  (*See* J.A. 1277-78, 1406.)  However, "it wasn't long before relief turned into terror."  (J.A. 1406.)  Jones realized the burden her termination placed on her family, stating:

> I am the bread winner of the family so it caused concern that I had no job.  My husband works for Henrico County Sheriff's Department as a deputy in the court, a bailiff, and he makes about $35,000 a year.  We have four children.  At that time ranged from age eleven to age four.  So there was a lot of responsibility, and always had been on my shoulders to provide for the family.

(J.A. 1278.)  Prior to her termination, Jones earned approximately $195,000.00 from SouthPeak in yearly gross compensation.  (*See* J.A. 1282-83.)

Jones subsequently applied to "many many jobs," (J.A. 1278), preparing over a hundred job applications, (J.A. 1280), and working "tirelessly" to look for jobs on the Internet, (J.A. 1406; *see also* J.A. 1280.)  Further, Jones lost job opportunities or was simply not considered for jobs due to her termination by Defendants:

> [T]o continually look for a job and not be able to get one.  You know, when you are not working and you, in applying for jobs, that is easy thing that employers do is just knock out the people that don't have current jobs.  So in the interviews that I did go on, it was, they would always get to the question, why were you terminated?  And that was not a good conversation.

(J.A. 1287.)  Additionally, numerous statements in SouthPeak's public filings referenced Jones' termination, (*see* J.A. 1288-90), and explained, "[o]ur senior management lacked the necessary experience," (*see* J.A. 1290-91.)

11

Without work, Jones applied for unemployment benefits from the Virginia Employment Commission ("VEC").  (J.A. 1278-79.)  Being forced to seek such benefits, Jones felt "awful to be in the position where you are needing to get unemployment benefits and don't have income to support your family."  (J.A. 1279.)  In addition, Jones noted such benefits are "only for an interim period . . . and it's not a lot of money, really, to cover expenses of the family, caring for the family, and making sure everybody is taken care of."  (J.A. 1279.)

With "the same bills to pay and the children to support," (J.A. 1286), Jones was also forced to dissipate approximately $38,000.00 in IRA accounts, (*see* J.A. 1284-86), and incur approximately $85,000.00 in credit card and home equity debt, (*see* J.A. 1286-87.)  Jones' family ran through "[e]very bit of savings, every credit card, everything we had."  (J.A. 1406.)

Jones received unemployment benefits for the remainder of 2009 and between brief contract jobs in 2010.  (J.A. 1279.)  Not until July 25, 2011, approximately twenty-three (23) months after her termination, did Jones finally secure employment with her current employer, with the help of another employee who previously worked with Jones.  (*See* J.A. 1281, 1287.)  At her current position, Jones receives significantly less income and benefits.  (*See* J.A. 1282-83.)

After her termination from SouthPeak, Jones had to explain her termination to her family, including her four young children, neighbors, and business

12

associates. (J.A. 1287.) To help cope with the termination, Jones used her deep faith and turned to religion and prayer. (*See* J.A. 1407.) Even four years after her termination, Jones cries a lot based on reliving her experience at SouthPeak and her termination, describing, in detail, her experience and summarizing her experience as "very traumatic," "awful," and "bad." (J.A. 1288.) Jones' husband described his wife's emotional distress, stating:

> I have been woken up many times in the middle of the night with her crying. Not understanding, like, people do the things they do, and lie about her. And just not knowing why bad things happen. And, you know, nothing I can do except roll over, hug her, and then fall back to sleep, because I am I am who I am, I guess.

(J.A. 1407-08.)

## II.    PROCEDURAL HISTORY[4]

On October 5, 2009, Jones, by counsel, filed the administrative complaint. (J.A. 31, 173.) After more than 180 days passed since Jones filed the administrative complaint without the issuance of a final decision by the Secretary of Labor, Jones, by counsel, served Defendants with advance fifteen (15) day written notice of her intent to pursue this matter in district court by letter dated August 20, 2010. (*See* J.A. 31, 437, 450.) Thereafter, on June 18, 2012, Jones, by counsel, filed this action against Defendants. (J.A. 29.)

---

[4] *See also supra* Jurisdictional Statement.

On August 13, 2012, Phillips and Mroz filed motions to dismiss Count I for lack of subject matter jurisdiction, claiming Jones failed to exhaust administrative remedies under the Sarbanes-Oxley Act. (*See* J.A. 62-72, 84-100, 101-11, 123-40.) Thereafter, on December 29, 2012, Defendants filed motions to dismiss Count I, alleging Count I was time barred by the two-year statute of limitations under 28 U.S.C. § 1658(b)(1). (*See* J.A. 491-504.)

On March 5, 2013, the District Court heard oral argument on all motions to dismiss. (J.A. 738). On March 19, 2013, the District Court issued an Order denying both the motion to dismiss for lack of subject matter jurisdiction of Phillips and Mroz and the motion to dismiss based on a two-year statute of limitations of Defendants. (J.A. 757.) The District Court further issued a Memorandum Opinion, finding, as to the motion to dismiss for lack of subject matter jurisdiction, Jones properly filed an administrative complaint against Phillips and Mroz thereby allowing OSHA to perform an adequate investigation. (*See* J.A. 739-44.) In addition, the District Court held, as to the motion to dismiss based on a two-year statute of limitations, because a whistleblower claim does not accrue until the alleged retaliatory action is taken, the plain reading of 28 U.S.C. § 1658 does not support a two-year statute of limitations running from the date fraudulent conduct is discovered. (*See* J.A. 744-50.)

14

On July 18, 2013, after a four-day jury trial, the jury returned a verdict for Jones, finding all three Defendants liable. (J.A. 2045; *see also* J.A. 1936.) On the verdict form,[5] the jury assessed $593,000.00 in back pay and $357,000.00 in compensatory damages against SouthPeak. (J.A. 2045; *see also* J.A. 1935-38.) Although the jury further found Phillips and Mroz liable to Jones, it did not initially assess any damages against Phillips or Mroz. (J.A. 2045; *see also* J.A. 1936.)

Because the jury verdict found Phillips and Mroz liable, but initially did not assess damages against Phillips and Mroz, which clearly presented an inconsistent result, the District Court advised counsel of the conflicting verdict and his intent to instruct the jury to ascertain whether the jury was attempting to account for no duplication of damages. (*See* J.A. 1935-36.) Neither counsel objected. (*See* J.A. 1935-36.) The District Court proceeded to instruct the jury to clarify the inconsistent verdict. (*See* J.A. 1936-38.)

After returning to the jury room, the jury passed a note to the District Court, stating,

> From SouthPeak we want a total of 593,000 back pay [and] 357,000 compensatory. We do not find that Terry Phillips or Melanie Mroz are individually responsible for any amount.

---

[5] The memorandum opinion of the District Court includes a blank copy of the verdict form. (*See* J.A. 2049-50.)

(J.A. 2052; *see also* J.A. 1939.)  After the District Court received the note, the District Court conferred with counsel and defense counsel *explicitly agreed* with the District Court that the jury needed to amend the verdict form to reflect the note. (*See* J.A. 1939-40.)

When the jury returned to the courtroom, the District Court instructed the jury to eliminate the checkmarks in the box finding liability for Phillips and Mroz and check the box finding no liability for Phillips and Mroz.  (*See* J.A. 1940-41.) After instructing the jury on amending the verdict form, the District Court asked the jury if they needed to retire or if they can amend the verdict form in the courtroom.  (J.A. 1941.)  The jury foreperson answered, "I don't need to retire, but evidently someone else does," (J.A. 1941), as one or more of the jurors communicated the need to retire for further discussion, (J.A. 2055.)  The jury again retired for further deliberations.  (J.A. 1942.)

The jury returned to the courtroom for a third time with an amended verdict form.  (*See* J.A. 1942.)  On the amended verdict form, the jury found in favor of Jones against SouthPeak and awarded Jones $593,000.00 in back pay damages with no compensatory damages.  (J.A. 1943.)  Furthermore, like the original verdict form, the amended verdict form reflected a finding in favor of Jones against Phillips and Mroz.  (J.A. 1943.)  The amended verdict form, however, awarded Jones $178,500.00 in compensatory damages against Phillips and $178,500 in

16

compensatory damages against Mroz. (J.A. 1943.)  The amended verdict form did not assess back pay damages against either Phillips or Mroz. (J.A. 1943.)

Upon request by defense counsel, the District Court polled the jury and each juror affirmed the amended verdict. (*See* J.A. 1952, 1954-55.)

On August 20, 2013, Defendants filed a motion for remitter, a new trial, and/or to amend the judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure. (*See* J.A. 1960.)  Defendants argued, in part, (1) the compensatory damages award against Phillips and Mroz is excessive; (2) the back pay award is not supported by the evidence; (3) the compensatory damages award against Phillips and Mroz should be amended to reflect a single award; (4) the District Court should have entered the first verdict form returned by the jury. (*See* J.A. 1963-92.)

On August 30, 2013, Jones filed a memorandum in opposition to Defendants' motion, (*see* J.A. 1993-2035), and, in doing so, consented to a reduction in the amount awarded in back pay damages to $470,000.00 to reflect the evidence presented at trial, (J.A. 2003.)

Following oral argument, on October 29, 2013, the District Court issued an Order, (1) denying the motion for a new trial based on the alleged error of the District Court in entering the amended verdict; (2) amending the back pay award against SouthPeak to reflect $470,000.00 in back pay damages and $123,000.00 in

17

compensatory damages; (3) denying the motion to amend the judgment to reflect a single joint award of compensatory damages against Phillips and Mroz; and (4) reducing the compensatory damages awards against Phillips and Mroz from $178,500.00 each to $50,000.00 each. (J.A. 2085-86.)

Thereafter, on November 7, 2013, Jones filed an acceptance of the District Court's Order reducing the separate compensatory awards against Phillips and Mroz to $50,000.00 each. (J.A. 2094.)

## SUMMARY OF THE ARGUMENT

The four-year statute of limitations set forth at 28 U.S.C. § 1658(a), rather than the two-year statute of limitations set forth at 28 U.S.C. § 1658(b)(1), applies to Count I. The plain language of 28 U.S.C. § 1658(b)(1) contemplates a "discovery" particular to fraud cases, and since a whistleblower retaliation action under 18 U.S.C. § 1514A is not a claim that involves proving fraud, rather, it is only necessary to prove a plaintiff's reasonable belief of a violation, the limitations period of § 1658(b) is inappropriate. Additionally, applying the two-year statute of limitations to a whistleblower claim from the discovery of facts constituting fraud would produce an "absurd" result. Further, Jones satisfied the two requirements for de novo review in federal court, as set forth in *Jordan*, and under such reasoning, Jones' claim is timely and not barred by the statute of limitations. Nonetheless, Jones brought this action well within both the two- and four-year

18

period following the exhaustion of her administrative remedies on August 23, 2010; therefore, Jones' claim is timely and not barred by the statute of limitations.

Jones properly exhausted her administrative remedies against Phillips and Mroz. Jones "afforded OSHA the opportunity to perform an adequate investigation" and "to resolve the allegations administratively" as to the role of Phillips and Mroz in Jones' termination, as Jones clearly and obviously named Phillips and Mroz as "**person(s) who are alleged to have violated the Act (*who the complaint is being filed against*)**." Furthermore, although whether Phillips and Mroz were on notice they allegedly violated the law and may be named in this action "has no consequence," Phillips and Mroz nevertheless had sufficient notice given they were obviously and clearly named in the administrative complaint, counsel for SouthPeak discussed the allegations with them, and Owen interviewed them regarding the allegations.

Emotional damages are available under 18 U.S.C. § 1514A(c). The overwhelming majority federal court and agency jurisprudence under the Sarbanes-Oxley Act and federal statutes with similar remedies provisions to § 1514A(c) finds emotional damages to be available. Further, the District Court did not abuse its discretion by finding Jones presented sufficient evidence to support a compensatory damages award of $100,000.00.

Finally, the District Court's decision to instruct the jury following receipt of the inconsistent first verdict form and after receipt of the note, without objection by defense counsel and upon agreement of defense counsel, was proper, in accordance with Rule 49(b)(3) of the Federal Rules of Civil Procedure, and not an abuse of discretion. Further, the District Court did not abuse its discretion in accepting the second verdict form following a poll of the jury and the jury did not exceed the instructions of the District Court.

## STANDARD OF REVIEW

Issue I, whether the two- or four-year statute of limitations provided under 28 U.S.C. § 1658 applies to whistleblower claims under the Sarbanes-Oxley Act, and Issue III.A., whether emotional damages are available under 18 U.S.C. § 1514A(c), both present "a question of statutory interpretation, which is a question of law that [this Court] review[s] de novo." *Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239, 242-43 (4th Cir. 2009).

Issue II, whether the District Court lacked subject matter jurisdiction over Count I, is subject to de novo review. *See, e.g.*, *Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-69 (4th Cir. 1991).

Issue III.B., whether Jones presented sufficient evidence to support a compensatory damages award of $100,000.00 against Phillips and Mroz, [6] and Issue IV, whether the District Court properly instructed the jury following receipt of the jury verdict, are reviewed on appeal by this Court for abuse of discretion. *See, e.g.*, *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) ("The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion."); *Robinson v. Wix Filtration Corp. L.L.C.*, 599 F.3d 403, 407 (4th Cir. 2010) (stating this Court reviews the denial of a motion to alter or amend a judgment for abuse of discretion).

## **ARGUMENT**

### **I.     THE FOUR-YEAR STATUTE OF LIMITATIONS SET FORTH AT 28 U.S.C. § 1658(a) APPLIES TO WHISTLEBLOWER CLAIMS UNDER THE SARBANES-OXLEY ACT.**

The Sarbanes-Oxley Act prohibits any publicly traded company, or any officer or employee thereof, from discharging or otherwise discriminating against any employee "who provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the

---

[6] Defendants incorrectly allege, Issue III.B. "is a matter of law" and "reviewed *de novo* by this Court." (Appellants' Br., Doc. No. 20, at 10.) Indeed, as to the same issue, Defendants previously stated in a post-trial motion, "[t]he grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed upon a showing of abuse of discretion." (J.A. 1968.)

employee reasonably believes constitutes a violation" of certain federal laws and regulations. *See* 18 U.S.C. § 1514A(a)(1). An aggrieved employee may file an administrative complaint with OSHA within "90 days after the date on which the violation occurs." *See* 18 U.S.C. § 1514A(b)(1)(A); 18 U.S.C. § 1514A(b)(2)(D). After 180 days pass from the date the employee filed the administrative complaint without the issuance of a final decision by the DOL, the employee may bring an action for de novo review in the appropriate district court of the United States. 18 U.S.C. § 1514A(b)(1)(B). Section 1514A does not contain a specific statute of limitations for when an employee must file in federal court. *See Jordan v. Sprint Nextel Corp.*, Case No. 12-2573, slip op. at 12 (D. Kan. Mar. 11, 2014).

In this matter, the District Court applied the four-year statute of limitations set forth at 28 U.S.C. § 1658(a). (*See* J.A. 750.) Defendants allege the two-year statute of limitations set forth at 28 U.S.C. § 1658(b) applies. (*See* Appellants' Br., Doc. 20, at 11-18.) Section 1658 provides, in full:

> (a)     Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

> (b)     Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—

22

> (1)    2 years after the discovery of the facts constituting the violation; or
>
> (2)    5 years after such violation.

28 U.S.C. § 1658.[7]

### A.    The Plain Language of § 1658(b)(1) Does Not Support an Application to Whistleblower Claims Under 18 U.S.C. § 1514A.

When interpreting statutes, the Fourth Circuit begins with the plain language of the statute. *Stone*, 591 F.3d at 243.  "Under the first and 'cardinal canon' of statutory construction, 'courts must presume that a legislature says in a statute what it means and means in a statute what it says.'" *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992)).  "Courts will not, however, adopt a 'literal' construction of a statute if such interpretation would thwart the statute's obvious purpose or lead to an 'absurd result.'" *Id.* (citations omitted).

Part (b)(1) of § 1658 provides a two-year statute of limitations "*after the discovery of the facts constituting the violation*" for actions involving a claim of fraud in contravention of a regulatory requirement concerning the securities laws. *See* 28 U.S.C. § 1658(b)(1) (emphasis added).  The Supreme Court of the United States, analyzing the term "discovery" in § 1658(b)(1), recognized such language arose in fraud cases, stating, in part:

---

[7] The Sarbanes-Oxley Act amended 28 U.S.C. § 1658 by adding part (b).  *Public Company Accounting Reform and Investor Protection Act of 2002*, Pub. L. No. 107-204, § 804(a), 116 Stat. 745, 801 (July 30, 2002).

> [I]n the statute of limitations context, the word "discovery" is often used as a term of art in connection with the "discovery rule," a doctrine that delays accrual of a cause of action until the plaintiff has "discovered" it. The rule arose in fraud cases as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a "complete and present cause of action." This Court long ago recognized that something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded. . . . Accordingly, "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." And for more than a century, courts have understood that "[f]raud is deemed to be discovered . . . when, in the exercise of reasonable diligence, it could have been discovered."

*Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1793-94 (2010) (citations omitted).[8]

In this case, and as alleged by Defendants, under § 1658(b)(1), "the discovery of the facts constituting the violation" must necessarily be the date of Jones' termination, August 14, 2009, since Jones' administrative cause of action for retaliation under the Sarbanes-Oxley Act did not accrue until she suffered an adverse employment action. (*See* Appellants' Br., Doc. 20, at 15; J.A. 498.). However, such a result is inapposite to the language of § 1658(b)(1). The language contemplates a "discovery" particular to fraud cases, as described by the Supreme Court in *Merck*. Indeed, Jones discovered the facts constituting the underlying

---

[8] The Supreme Court did recognize "both state and federal courts have applied forms of the 'discovery rule' to claims other than fraud." *Id.* at 1794 (citing *United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352 (1979) which involved a statute of limitations for personal injuries).

24

alleged violations of relevant law in late May 2009.  (*See* J.A. 37, 1175-77.)  As

the District Court recognized,

> Unlike all other private causes of action arising out of violations of the securities laws, a whistleblower retaliation claim involves <u>two</u> separate and distinct "violations."  First, there must be a reasonable belief that there is a violation of the securities law.  Second, there must be a retaliatory personnel action, which itself is a violation of the law.

(J.A. 749 (emphasis in original).)

In determining the four-year statute of limitations set forth at 28 U.S.C. §

1658(a) applied to whistleblower claims under 18 U.S.C. § 1514A of the Sarbanes-

Oxley Act, the District Court analyzed the plain language of 28 U.S.C. §

1658(b)(1).  (*See* J.A. 748-50.)  The District Court acknowledged applying the

two-year statute of limitations to a whistleblower claim from the discovery of facts

constituting fraud would produce an "absurd" result:

> A quite natural reading of the statute would suggest that it was two years from the "fraud . . . in contravention of a regulatory requirement."  However, because a whistleblower claim does not accrue until the alleged retaliatory action is taken, it would be entirely plausible that, if the statute of limitations runs two years from the discovery of the fraud, the statute of limitations would be exhausted before the whistleblower cause of action accrued.

(J.A. 749.)  Consequently, "the term 'the violation' must be read to refer neither to

the claim of fraud nor even to the cause of action, but to the extrinsic act of

retaliatory discharge" and, therefore, "the definite article 'the' refers to an event

not referenced in the statute."  (J.A. 749-50.)  The District Court, therefore,

"decline[d] to adopt such a tortured reading of the statute when a plain reading provides an interpretation that is clear, non-absurd, and logically consistent," and rather applied the four-year statute of limitations provided by 28 U.S.C. § 1658(a). (J.A. 750.)

Defendants again solely rely *Ellis v. CommSCOPE, Inc.*, an unpublished opinion from the Northern District of Texas, to support their position that the two-year statute of limitations provided by 28 U.S.C. § 1658(b)(1) applies to Sarbanes-Oxley retaliation claims under 18 U.S.C. § 1514A.  (*See* Appellants' Br., Doc. 20, at 12-13; J.A. 496.)  However, the *Ellis* decision provides no clear reasoning or analysis for applying 28 U.S.C. § 1658(b)(1) to Sarbanes-Oxley retaliation claims. *See* No. 3:07-CV-1938, 2008 WL 4191482, at *4 (N.D. Tex. Sept. 11, 2008). Indeed, the application of § 1658(b)(1) had no material effect upon the ruling in *Ellis* as the plaintiff filed his motion for leave to amend in order to add the defendant within two years of his termination.  *See id.*

Since the District Court issued its Memorandum Opinion, one other federal district court issued an opinion regarding the statute of limitations for filing a whistleblower retaliation claim in federal court.  *See Jordan v. Sprint Nextel Corp.*, Case No. 12-2573, slip op. at 11-17 (D. Kan. Mar. 11, 2014).  In *Jordan*, the court recognized *Ellis* and the District Court's decision in this matter as the only two cases specifically addressing the issue.  *Id.* at 12.  The court agreed with the

District Court's holding in this matter as to § 1658(b) and explicitly rejected its application. *Id.* at 15. Although the court acknowledged "it would appear that § 1658(a) could be applicable," the court found the language applying § 1658(a) "except as otherwise provided by law" directed the court to 18 U.S.C. § 1514A. *See id.* Citing this Court's decision in *Stone v. Instrumentation Laboratory Company*, the court analyzed the language of § 1514A and found "there appear to be two requirements for de novo review in federal court: (1) a final decision was not issued within 180 days of the filing of the complaint, and (2) the delay was not due to the claimant's bad faith." *See id.* at 16-17. The court, accordingly, held "the plain language of the statute states that Plaintiff has the right to seek de novo review in federal court" as long as the two requirements are met, and since the plaintiff met those requirements, the plaintiff's claim is not barred by the statute of limitations. *Id.* at 17. Alternatively, the same reasoning could also apply here.

As the plain language of 28 U.S.C. § 1658(b)(1) contemplates a "discovery" particular to fraud cases, as described by the Supreme Court in *Merck*, and applying the two-year statute of limitations to a whistleblower claim from the discovery of facts constituting fraud would produce an "absurd" result, as described by the District Court, the four-year statute of limitations set forth at 28 U.S.C. § 1658(a) must apply. Jones nonetheless brought this action well within both the two- and four-year period following the exhaustion of her administrative

27

remedies on August 23, 2010[9]; therefore, Jones' claim is timely and not barred by any of the provisions of the statute of limitations of 28 U.S.C. § 1658.

Further, Jones satisfied the two requirements for de novo review in federal court, as set forth in *Jordan*. Should this Court find the reasoning in *Jordan* persuasive, Jones' claim is still timely and not barred by the statute of limitations.

### B. An Employee is Not Required to Prove Fraud Under 18 U.S.C. § 1514A, Therefore, 28 U.S.C. § 1658(b) Does Not Apply to Whistleblower Claims Under 18 U.S.C. § 1514A.

The two-year statute of limitations provided by 28 U.S.C. § 1658(b) applies to "actions involving a claim of fraud . . . in contravention of a regulatory requirement concerning the securities laws" or, in other words, "securities fraud cases." *See* 28 U.S.C. § 1658(b)(1); 148 Cong. Rec. S7418 (daily ed. July 26, 2002) (remarks of Sen. Leahy) (discussing the section of the Sarbanes-Oxley Act amending 28 U.S.C. § 1658 and stating "[t]his section would set the statute of

---

[9] The applicable limitations period commenced for filing in federal district court on August 23, 2010, when the DOL terminated the administrative proceedings by dismissing the administrative complaint pursuant to the notice of Jones' intent to proceed in district court dated August 20, 2010. (*See* J.A. 525.) This Court recognizes that "when an employee is required to exhaust an administrative remedy, the applicable limitations period for filing an action in federal court is tolled pending the exhaustion of that administrative remedy." *Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988); *see also Kolomick v. United Steelworkers of America, District 8*, 762 F.2d 354, 356 (4th Cir. 1985). As "[e]xhaustion of administrative remedies is a statutorily-mandated prerequisite to bringing a Sarbanes-Oxley whistleblower suit," *see JDS Uniphase Corp.*, 473 F. Supp. 2d at 710, the applicable limitations period is tolled during the pendency of the administrative proceedings with the DOL.

limitations in private *securities fraud cases* to the earlier of two years after the discovery of the facts constituting the violation or five years after such violation").[10]   A Sarbanes-Oxley retaliation action under 18 U.S.C. § 1514A does not involve proof of a claim of fraud and is not a securities fraud case contemplated by 28 U.S.C. § 1658(b).   Indeed, a plaintiff bringing a private retaliation action under 18 U.S.C. § 1514A does not have to prove securities fraud actually occurred, only a reasonable belief such fraud occurred.

To establish a *prima facie* case of retaliation under 18 U.S.C. § 1514A, an employee must demonstrate:

(i)     The employee engaged in a protected activity;
(ii)    The respondent knew or suspected that the employee engaged in the protected activity;
(iii)   The employee suffered an adverse action; and
(iv)    The circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.

29 C.F.R. § 1980.104(e)(2); *see also Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008); *JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 711 (E.D. Va.

---

[10]  *See also In re Alstom SA Securities Litigation*, 406 F. Supp. 2d 402, 415 (S.D.N.Y. 2005) ("Senator Leahy, the sponsor and author of Title VIII, did not specifically state whether this reference to 'fraud actions' was meant to encompass only securities claims that require proof of fraud as an element of the cause of action, or whether it extended as well to any claim under the securities laws based more broadly on allegations of a fraudulent course of conduct by a defendant. However, Senator Leahy's remarks mentioned the *Lampf* decision, which concerned the statute of limitations applicable to actions brought under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  This reference suggests that Senator Leahy's focus was on causes of action which, like Section 10(b), require actual proof of fraud.").

2007). Further, rather than proving actual fraud to establish an employee engaged in protected activity under the Sarbanes-Oxley Act, "an employee must show that he had both *'a subjective belief and an objectively reasonable belief' that the conduct he complained of constituted a violation of relevant law*." *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008) (quoting *Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008)) (emphasis added). As long as the complainant reasonably believes the contested activities are unlawful, the Sarbanes-Oxley Act does not require the complainant to have proof establishing an actionable crime or violation (actual fraud), nor does it even require the activities complained of amount to an actual violation of the law. *See Welch*, 536 F.3d at 277 (agreeing that requiring an employee to complain of an actual violation of a listed law in order to engage in protected activity would contradict the text of § 1514A).

Therefore, since a whistleblower retaliation action under 18 U.S.C. § 1514A is not a claim that involves proving fraud, rather, it is only necessary to prove a plaintiff's reasonable belief of a violation, which includes a violation of a rule or regulation of the SEC,[11] the limitations period of § 1658(b) is inappropriate for such an action.

---

[11] A violation of a rule or regulation of the SEC does not necessarily involve fraud.

30

## II.    JONES EXHAUSTED HER ADMINISTRATIVE REMEDIES AGAINST PHILLIPS AND MROZ.

As set forth above, "[e]xhaustion of administrative remedies is a statutorily-mandated prerequisite to bringing a Sarbanes-Oxley whistleblower suit." *JDS Uniphase Corp.*, 473 F. Supp. 2d at 710.    The requirement to exhaust administrative remedies exists to "afford OSHA the opportunity to resolve the allegations administratively." *Smith v. Psychiatric Solutions, Inc*., No. 3:08-cv-3, 2009 WL 903624, at *8 (N.D. Fla. Mar. 31, 2009) (quotations omitted).    Further, "[t]his exhaustion requirement is jurisdictional." *JDS Uniphase Corp.*, 473 F. Supp. 2d at 710.

Under the Sarbanes-Oxley Act, whistleblowers must file such complaint within "90 days after the date on which the violation occurs." *See* 18 U.S.C. § 1514A(b)(2)(D); 29 C.F.R. § 1980.103(d).    "No particular form of complaint is required.    A complaint may be filed orally or in writing." 29 C.F.R. § 1980.103(b).

Courts have dismissed defendants from whistleblower retaliation actions under the Sarbanes-Oxley Act where the plaintiff failed to name such defendants in a prominent manner in the administrative complaint with OSHA.    *See, e.g.*, *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1103-04 (D. Colo. 2013) (finding the plaintiff failed to exhaust his administrative remedies with respect to defendants he failed to name as respondents or even mention in his administrative complaint); *Bridges v. McDonald's Corp.*, Case No. 09-cv-1880, slip op. at 5-6 (N.D. Ill. Dec.

31

21, 2009) (holding the mention of an individual defendant in the body of the complaint to be insufficient when the other defendant was named as a respondent); *Smith*, 2009 WL 903624, at *8 (finding the plaintiff failed to properly exhaust her administrative remedies against defendants who the plaintiff "did not name . . . in the heading of her administrative complaint or indeed *anywhere* in her complaint"); *Smith v. Corning Inc.*, No. 06-cv-6516 (W.D. N.Y. July 23, 2007) (finding the failure to name one defendant as a respondent or "named person" while naming another did not provide OSHA sufficient notice as to the unnamed defendant); *Bozeman v. Per-Se Technologies, Inc.*, 456 F. Supp. 2d 1282, 1358 (N.D. Ga. 2006) (granting summary judgment in favor of two defendants because the plaintiff "failed to specifically name them in the heading of his administrative complaint," "failed to even mention [one defendant] in his OSHA complaint, and the mere fact that [the other defendant was] mentioned in the body of the OSHA complaint [was] insufficient"); *Hanna v. WCI Communities, Inc.*, No. 04-80595, 2004 WL 6072492, at *2-3 (S.D. Fla. Nov. 29, 2004) (dismissing the defendant even though "[the defendant] was 'identified as an actor in [the plaintiff's] termination on page 5 of [the plaintiff's initial administrative claim" because "[the plaintiff's] failure to name [the defendant] in his administrative complaint failed to afford OSHA the opportunity to resolve [the plaintiff's] allegations through the administrative process"). As the administrative complaint must "afford OSHA the

opportunity to resolve the allegations administratively," whether the defendant "was placed on notice that he had allegedly violated the law . . . has no consequence as to whether OSHA was placed on notice that it was required to investigate [the defendant's] actions." *Hanna*, 2004 WL 6072492, at *3.

However, in *Morrison v. MacDermid, Inc.*, the court held since "there is no particular form required when filing a Complaint with OSHA for the purposes of the Act," a letter specifically naming a defendant as a "major actor" in the alleged wrongdoing "afforded OSHA the opportunity to perform an adequate investigation as to [the defendant's] role in [the plaintiff's] termination." No. 07-cv-01535, 2008 WL 4293655, at *3 (D. Colo. Sept. 16, 2008). In that case, the defendant filed a motion to dismiss alleging the plaintiff failed to exhaust his administrative remedies prior to filing the action in district court because the plaintiff failed to name each defendant in the caption of his complaint to the DOL. *See* 2008 WL 4293655, at *3. The plaintiff's complaint was in the form of a two-page letter to the DOL naming the defendant as a major actor in the wrongdoing. *See id.* Recognizing "there is no particular form required when filing a complaint with OSHA for the purposes of the Act," *id.* (citing 29 C.F.R. § 1980.103(b)), the Court found "OSHA . . . had sufficient notice that [the plaintiff] believed [the defendant] was involved in his wrongful termination" and, therefore, the plaintiff's "letter afforded OSHA the opportunity to perform an adequate investigation as to [the

33

defendant's] role in [the plaintiff's] termination." *Id.* The Court further found the defendant was on notice that he may be named in the plaintiff's lawsuit. *See id.*

**A.    The Administrative Complaint Afforded OSHA the Opportunity to Resolve the Allegations Against Phillips and Mroz Administratively.**

In this case, on October 5, 2009, Jones timely and properly filed the administrative complaint with OSHA and named Phillips and Mroz as persons who violated the Sarbanes-Oxley Act. (*See* J.A. 173-74.) Similar to *Morrison*, Jones' administrative complaint is in the form of a letter addressed to John Hermanson, Regional Administrator of OSHA. (*See* J.A. 173.) In fact, the caption of the administrative complaint does not name *any* respondent, providing, in full, "Whistleblower Complaint of Andrea Jones under Section 806 of the Sarbanes-Oxley Act of 2002, as amended, 18 United States Code Section 1514A (the 'Act'), and 29 C.F.R. 1980.103." (J.A. 173.) However, unlike the plaintiff in *Morrison* who merely described the defendant as a major actor in the alleged wrongdoing, and unlike the plaintiffs in each of the cases cited by Defendants, Jones more specifically and clearly names/lists SouthPeak, Phillips, and Mroz as "**person(s) who are alleged to have violated the Act (*who the complaint is being filed against*)**." (J.A. 174 (emphasis added).) Furthermore, the administrative complaint totals thirty-one (31) pages, including attachments, with detailed

allegations against Phillips and Mroz and far exceeds those included in the two-page letter at issue in *Morrison*. (*See* 176-203.)

The District Court correctly held Jones properly filed an administrative complaint against Phillips and Mroz thereby allowing OSHA to perform an adequate investigation of their actions in this case. (*See* J.A. 739-44.) Noting "the key question" is "not whether the defendant 'was placed on notice that he had allegedly violated the law,' rather the OSHA complaint must serve to put <u>OSHA</u> 'on notice that it was required to investigate [the defendant's] actions in this case,'" the District Court analyzed whether the administrative complaint properly provided OSHA such notice. (*See* J.A. 742-43 (emphasis and alterations in original).) Noting Jones specifically identified Phillips and Mroz as "persons 'who the complaint is being filed against,'" the District Court observed "[i]t could not have been clearer that Jones intended to name Phillips, Strachan, and Mroz in her administrative complaint" and it was an "obvious fact that Jones named the individuals in the complaint that she filed with OSHA." (J.A. 744.) Further, the District Court acknowledged although Jones failed to list the addresses of Phillips and Mroz, it "merely indicates a reasonable assumption that the officers of the corporation could be found at, or through, the corporation." (J.A. 744.)

OSHA's choice to focus its efforts in prosecuting SouthPeak is immaterial as, "based on the form of [Jones'] complaint, OSHA, conducting its investigation

35

as a division of the DOL, had sufficient notice that [Plaintiff] believed [Phillips and Mroz were] involved in [Jones'] wrongful termination." *See Morrison*, 2008 WL 4293655, at *3. In addition, since "[n]o particular form of complaint is required," *see* 29 C.F.R. § 1980.103(b), requiring an aggrieved employee to explicitly set forth a "caption" or "heading" and name respondents in any formal way, other than to provide OSHA notice of "who the complaint is being filed against," is explicitly contrary to the Sarbanes-Oxley Act.

As Jones clearly and obviously named Phillips and Mroz as "**person(s) who are alleged to have violated the Act (*who the complaint is being filed against*),"** (J.A. 174), Jones "afforded OSHA the opportunity to perform an adequate investigation" and "to resolve the allegations administratively" as to the role of Phillips and Mroz in Jones' termination. Therefore, Jones properly exhausted her administrative remedies against Phillips and Mroz.

### B. The Administrative Complaint Placed Phillips and Mroz on Notice They May Be Named in This Action.

Finally, although whether the defendant "was placed on notice that he had allegedly violated the law . . . has no consequence as to whether OSHA was placed on notice that it was required to investigate [the defendant's] actions," *Hanna*, 2004 WL 6072492, at *3, the administrative complaint nonetheless placed Phillips and Mroz on notice they may be named in this action.

As mentioned numerous times above, the administrative complaint named Phillips and Mroz as "**person(s) who are alleged to have violated the Act (*who the complaint is being filed against*)**."    (J.A. 174).    In addition, OSHA's notification to SouthPeak of the administrative complaint named Phillips as the contact person and Phillips was the main contact at SouthPeak for counsel for SouthPeak.  (*See* J.A. 430-36, 596.)  Furthermore, counsel for SouthPeak discussed the administrative charge process, the substantive allegations of the administrative complaint, and SouthPeak's factual position in response to those allegations with Phillips and Mroz, and Owen, a representative of OSHA, interviewed Phillips and Mroz regarding the allegations of the administrative complaint.  (*See* J.A. 595, 597, 624-26.)  Thereafter, Jones, by counsel, provided Phillips and Mroz with her notice of intent to file dated August 20, 2010, by certified mail on September 2, 2010, and the assistant of counsel for Jones e-mailed the same to counsel for SouthPeak on September 2, 2010.  (*See* J.A. 450-52, 461-64, 467-69.)

Although whether Phillips and Mroz were on notice they allegedly violated the law and may be named in this action "has no consequence," *Hanna*, 2004 WL 6072492, at *3, nonetheless, Phillips and Mroz had sufficient notice given they were obviously and clearly named in the administrative complaint, counsel for SouthPeak discussed the allegations with them, and Owen, a representative of OSHA, interviewed them regarding the allegations.

37

## III.   THE COMPENSATORY DAMAGES AWARDS AGAINST PHILLIPS AND MROZ ARE PROPER UNDER 18 U.S.C. § 1514A(c) AND NOT EXCESSIVE.

### A.   Emotional Damages are Available under 18 U.S.C. § 1514A(c).

An employee prevailing in a whistleblower retaliation action "shall be entitled to all relief necessary to make the employee whole."   18 U.S.C. § 1514A(c)(1).  This "make . . . whole" provision "shall include reinstatement with the same seniority status that the employee would have had, but for the discrimination; the amount of back pay, with interest; and compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees."  18 U.S.C. § 1514A(c)(2).

In this case, the District Court ruled emotional damages are available under 18 U.S.C. § 1514A(c).  (J.A. 2071-72.)  The District Court based its ruling on the language of 18 U.S.C. § 1514A(c)(1) providing a prevailing employee "shall be entitled to all relief necessary to make the employee whole."  (J.A. 2071-72.)  In addition, the District Court "embraced the same interpretative position as the Tenth Circuit in *Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1138-39 (10th Cir. 2013)."  (J.A. 2072.)

The Tenth Circuit is the highest federal court to address the scope of remedies under § 1514A.  *See Lockheed Martin Corp. v. Brown*, 717 F.3d 1121,

1138-39 (10th Cir. 2013).[12]  In *Lockheed Martin Corp.*, the employer argued an award of "non-economic compensatory damages for [the employee's] emotional pain and suffering, mental anguish, embarrassment, and humiliation was not authorized by 18 U.S.C. § 1514A(c)(2)."  *Id.* at 1138.  The Tenth Circuit noted, however, § 1514(c)(2) "provides that relief 'shall *include*' the relief specifically enumerated in that subsection, indicating it was not meant as an exhaustive list of all of the relief available to a successful claimant."  *Id.* (emphasis in original).  In addition, the Court emphasized § 1514A(c)(1) "provides that a prevailing employee 'shall be entitled to all relief necessary to make the employee whole.' "  *Id.*

Federal district courts are split on whether 18 U.S.C. § 1514A(c) permits recovery of emotional damages.  *See Asdale v. Int'l Game Tech.*, No. 3:04-cv-00703-RAM, slip op. at 32 (D. Nev. May 24, 2011) (permitting recovery of medical expenses related to emotional distress when the plaintiff only prevailed on a claim under 18 U.S.C. § 1514A); *cf. Hanna v. WCI Communities, Inc.*, 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004) (interpreting the language "all relief necessary to make the employee whole" to include recovery of reputational damages); *see also Mahony v. KeySpan Corp.*, No. 04-cf-554-SJ, 2007 WL

---

[12] This Court recently cited *Lockheed Martin Corp.* favorably.  *See Feldman v. Law Enforcement Assocs. Corp.*, No. 13-1849, slip op. at 20 (4th Cir. May 12, 2014).

805813, slip op. at 16-17 (E.D.N.Y. Mar. 12, 2007) (adopting the reasoning in *Hanna*).  *But see Hemphill v. Celanese Corp.*, Civ. Action No. 3:08-cv-2131-B, slip op. at 8-9 (N.D. Tex. Sept. 14, 2009) (finding damages available under 18 U.S.C. § 1514A to be restitutional in nature and striking the plaintiff's claim for emotional damages); *Walton v. Nova Info. Sys.*, 514 F. Supp. 2d 1031, 1035 (E.D. Tenn. 2007) (holding the remedies provision under the Sarbanes-Oxley Act does not provide for non-pecuniary, legal remedies, such as emotional damages); *cf. Jones v. Home Fed. Bank*, Case No. CV09-336-CWD, slip op. at 9-11 (D. Idaho Jan. 14, 2010) (agreeing that "general non-pecuniary damages for reputational injury would be akin to damages for emotional distress and allowance for such damages would expand the scope of remedies articulated in and intended by SOX," but adopting "the *Hanna* court's more specific definition of reputational injury"); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 803-05 (N.D. Cal. 2008) (holding there is no right to a jury trial under 18 U.S.C. § 1514A as the relief provided is equitable or restitutional in nature); *Murray v. TXU Corp.*, Civ. Action No. 3:03-CV-0888-P, 2005 WL 1356444, slip op. at 4-7 (N.D. Tex. June 7, 2005) (finding reputational damages to be unavailable as the remedies provision does not list non-pecuniary damages).

The Administrative Review Board (the "ARB") and the Office of Administrative Law Judges (the "ALJ") for the DOL, however, permit

40

whistleblower complainants to recover damages for emotional distress under 18 U.S.C. § 1514A(c). *See, e.g.*, *Menendez v. Halliburton, Inc.*, ARB No. 12-026, 2007-SOX-005, slip op. at 19-23 (ARB Mar. 15, 2013) (reissued with a corrected caption Mar. 20, 2013); *Kalkunte v. DVI Fin. Servs. Inc.*, ARB No. 05-139, 2004-SOX-056, slip op. at 15 (ARB Feb. 27, 2009); *Brown v. Lockheed Martin Corporation*, 2008-SOX-049, slip op. at 54 (ALJ Jan. 15, 2010), *aff'd*, ARB No. 10-050 (ARB Feb. 28, 2011), *aff'd*, 717 F.3d 1121 (10th Cir. 2013). Further, OSHA takes the position that "[c]ompensatory damages may be awarded under all the OSHA whistleblower statutes." OSHA WHISTLEBLOWER INVESTIGATIONS MANUAL, at 6-2 (Sept. 20, 2011) (listing "compensation for mental distress due to the adverse action"). [13]

Additionally, the ARB "has upheld countless compensatory damage awards under the whistleblower provisions of ERA and AIR21, upon which Section 806 was modeled." *Menendez*, ARB Case No. 12-026, slip op. at 19, 19 n.103 (noting

---

[13] Although "agency manuals and litigation documents" from the DOL and the OSHA "do not have the force of law," the Fourth Circuit affords such administrative rulings "respect to the extent that they possess the 'power to persuade.'" *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 438 (4th Cir. 2012) (quoting *Christensen v. Harris Cnty.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)). In "determining whether an agency interpretation has the power to persuade," the Fourth Circuit considers the following factors: "'the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements.'" *Id.* (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161 (1944)). Since the enactment of the Sarbanes-Oxley Act, the DOL and the OSHA have been strikingly consistent in awarding emotional damages under 18 U.S.C. § 1514A(c).

"Congress patterned Section 806 on similar whistleblower provisions in the Energy Reorganization Act (ERA), 42 U.S.C. § 5851; AIR 21, 49 U.S.C.A. § 42121" and "SOX's whistleblower-protection provisions very closely parallel the form of the employee-protection provision of Section 519 of AIR 21 codified at 49 U.S.C.A. § 42121" (citing 18 U.S.C. § 1514A(b)(2)).  As ERA and AIR21 "share similar statutory language, legislative intent, and broad remedial purpose . . . [t]hey should therefore be interpreted consistently." *Id.* at 20.

Furthermore, federal courts have awarded emotional damages under the similar remedies provisions of AIR 21 and the Federal Rail Safety Act, 49 U.S.C. § 20109 ("FRSA").  *See, e.g.*, *Vieques Air Link, Inc. v. U.S. Dep't of Labor*, 437 F.3d 102, 110 (1st Cir. 2006) (affirming an award by the ALJ under AIR 21 of damages for "mental anguish"); *Barati v. Metro-North R.R. Commuter R.R. Co.*, Civ. No. 3:10cv1756, slip op. at (D. Conn. Mar. 22, 2013) (concluding FRSA permits recovery for emotional distress since "AIR-21 has served as a statutory model for the FRSA, which expressly incorporates the burden of proof of AIR-21" and "there are no reported cases concluding that emotional distress damages are unavailable under AIR-21").

Finally, federal circuit courts resoundingly find emotional damages available under the False Claims Act ("FCA"), 31 U.S.C. § 3730, the federal whistleblower statute with the most significant line of precedent and a similar remedies provision

42

to the Sarbanes-Oxley Act.  *See, e.g.*, *Hammond v. Northland Counseling Center, Inc.*, 218 F.3d 886, 892-93 (8th Cir. 2000) (finding compensation for emotional distress "comports with the statute's requirement that a whistleblowing employee 'be entitled to all relief necessary to make the employee whole'"); *Neal v. Honeywell, Inc. & Alliant Tech. Sys.*, 191 F.3d 827, 831-32 (7th Cir. 1999).

Despite a handful of federal district court decisions directly or indirectly finding emotional damages unavailable under 18 U.S.C. § 1514A(c), the overwhelming majority federal court and agency jurisprudence under the Sarbanes-Oxley Act and federal statutes with similar remedies provisions to § 1514A(c) finds emotional damages to be available.  Similar to the District Court, here, and the Tenth Circuit in *Lockheed Martin Corp.*, 717 F.3d at 1138-39, both the Eighth Circuits found the language "all relief necessary to make the employee whole" to include compensation for emotional damages.  *See, e.g.*, *Hammond*, 218 F.3d at 892-93.  Further, the administrative rulings consistently permit whistleblower complainants to recover damages for emotional distress under 18 U.S.C. § 1514A(c).  *See, e.g.*, *Menendez*, ARB No. 12-026, slip op. at 19-23; *see also* OSHA Whistleblower Investigations Manual, at 6-2 (providing "[c]ompensatory damages may be awarded under all the OSHA whistleblower statutes," including "compensation for mental distress due to the adverse action").  In addition, federal courts and the DOL award emotional damages under the

43

similar remedies provisions of ERA, AIR 21, FRSA, and FCA. Notably, courts permit recovery of emotional damages under AIR 21, *see, e.g.*, *Vieques Air Link, Inc.*, 437 F.3d at 110, the rules and procedures of which the Sarbanes-Oxley Act adopted, 18 U.S.C. § 1514A(b)(2) (stating a whistleblower retaliation action "shall be governed under the rules and procedures set forth in" 49 U.S.C. § 42121(b)). Therefore, emotional damages are available under 18 U.S.C. § 1514A(c).

### B. The District Court Did Not Abuse its Discretion by Finding Jones Presented Sufficient Evidence to Support a Compensatory Damages Award of $100,000.00.

The decision whether to grant a new trial nisi remittitur if a court concludes that a jury award of compensatory damages is excessive is "entrusted to the sound discretion of the district court and [such determinations] will be reversed on appeal only upon a showing of abuse of discretion.... giv[ing] the benefit of every doubt to the judgment of the trial judge." *Sloane*, 510 F.3d at 502 (quoting *Cline*, 144 F.3d at 305). "A district court abuses its discretion only by upholding an award of damages when 'the jury's verdict is against the weight of the evidence or based on evidence which is false.'" *Sloane*, 510 F.3d at 502 (quoting *Cline*, 144 F.3d at 305).

"[A] plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress." *Price v. City of Charlotte, N.C.*,

44

93 F.3d 1241, 1254 (4th Cir. 1996). The emotional distress, however, must be "demonstrable, genuine, and adequately explained." *Id.* at 1252.

> In determining whether an award of damages for emotional distress . . . is excessive, an appellate court may look to a number of factors: medical attention resulting from the emotional duress; psychiatric or psychological treatment; the degree of such mental distress; the factual context in which the emotional distress developed; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; mitigating circumstances, if any; physical injuries suffered as a result of emotional distress; and loss of income, if any.

*Knussman v. State of Maryland*, 272 F.3d 625, 640 (4th Cir. 2001). Substantial awards for intangible injuries such as emotional distress are found in cases involving plaintiffs who "were discharged and had difficulty finding alternative employment." *See Hetzel v. County of Prince William*, 89 F.3d 169, 172 (4th Cir. 1996).

In this case, the jury returned a verdict in favor of Jones for $178,500.00 in compensatory damages against Phillips and $178,500 in compensatory damages against Mroz. (J.A. 1943.) On motion for a new trial nisi remittitur by Phillips and Mroz, the District Court reduced the compensatory damages awards against Phillips and Mroz from $178,500.00 each to $50,000.00 each, (J.A. 2085-86), which Jones thereafter accepted, (J.A. 2094.)

In so holding, the District Court acknowledged, "Jones did not present evidence of psychological or psychiatric treatment for emotional distress. Nor did

45

she show any physical injury as a consequence of her emotional distress." (J.A. 2077.) Further, the District Court found similarities between the evidence presented at trial in support of Jones' claim for emotional damages and the evidence presented in *Weihua Huang v. Rector and Visitors of University of Virginia*, No. 3:11-cv-50, 2013 WL 865845 (W.D. Va. Mar. 7, 2013). (*See* J.A. 2081-83 ("A review of the evidence presented in this case and awards in similar cases leads the Court to conclude that the Weihua Huang case is the closest analogue.").) Comparing the cases, the District Court noted

> Huang also was unlawfully terminated and he too subsequently struggled to find suitable employment, dislodging him from his former role as the breadwinner in his marriage. Huang also presented testimony about loss of income and physical manifestations of his distress (including disrupted sleep patterns). Finally, Huang also declined to seek medical attention for his distress.

(J.A. 2082 (internal citations omitted).) Given the court in *Weihua Huang* remitted the award of compensatory damages to $100,000, the District Court, here, concluded such an award to be an "appropriate computation . . . against which to measure the award of damages for emotional distress to Jones." (J.A. 2082-83.)

Besides *Weihua Huang*, the District Court based its decision on sufficient evidence of emotional damages presented at trial through the testimony of Jones and her husband. (*See* J.A. 2077-81.)

At trial, Jones presented evidence of the economic toll her termination had upon her family. Due to the termination from SouthPeak, Jones' family lost

approximately $195,000.00 in yearly income.  (*See* J.A. 1282-83.)  Given her husband "makes about $35,000 a year," (J.A. 1278), losing Jones' income was a great detriment to her family.  Jones testified as the "bread winner of the family" with four young children, she had "a lot of responsibility" and it had "always . . . been on [her] shoulders to provide for the family."  (J.A. 1278.)  Instead, Jones sought unemployment benefits from the VEC, were "only for an interim period . . . and it's not a lot of money, really, to cover expenses of the family, caring for the family, and making sure everybody is taken care of."  (J.A. 1279.)  Based on this evidence, the District Court found "the jury reasonably could infer that the inability to provide for her family was a contributing factor for her emotional distress." (J.A. 2077.)

At trial, Jones presented testimony corroborating her testimony regarding her emotional distress in the form of her husband, who described his wife's emotional distress, stating:

> I have been woken up many times in the middle of the night with her crying.  Not understanding, like, people do the things they do, and lie about her.  And just not knowing why bad things happen.  And, you know, nothing I can do except roll over, hug her, and then fall back to sleep, because I am I am who I am, I guess.

(J.A. 1407-08.)  Jones also testified she cries a lot based on reliving her experience at SouthPeak and her termination, describing, in detail, her experience as "very traumatic," "awful," and "bad."  (J.A. 1288.)  This evidence, as reasoned by the

47

District Court, "establishes a basis for the jury to infer that the termination caused significant loss of sleep and emotional distress evinced by chronic crying." (J.A. 2078.) Consequently, the District Court found "taken together with Jones' own testimony, the testimony of her husband describes outward manifestations of Jones' distress that were apparent to others." (J.A. 2078.)

Although Jones never sought medical attention, or psychiatric or psychological treatment, due to her emotional distress, to deal with her emotional distress, as Jones' husband observed, Jones used her deep faith and turned to religion and prayer. (*See* J.A. 1407.) Citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 547 (4th Cir. 2003) for the proposition that "where a plaintiff sought to address her distress through prayer and family support, her testimony should not be discounted for failing to have sought medical attention," the District Court noted:

> The resort to prayer and counseling by family members is objective evidence that Jones suffered from emotional distress that was sufficiently serious that Jones could not cope with it alone. And where, as here, Jones lost her job and benefits, she cannot be faulted for foregoing the expense of professional psychiatric or psychological counseling. Moreover, before the advent of such professional counseling, it was not at all unusual for people to seek aid and comfort from faith and family when coping with emotional distress.

(J.A. 2079.)

In addition, Jones presented evidence of humiliation. (*See* J.A. 2080.) As mentioned above, Jones was forced to seek unemployment benefits from the VEC,

(J.A. 1278-79), causing her to feel "awful to be in the position where you are needing to get unemployment benefits and don't have income to support your family," (J.A. 1279.)  With "the same bills to pay and the children to support," (J.A. 1286), Jones was also forced to dissipate approximately $38,000.00 in IRA accounts, (*see* J.A. 1284-86), and incur approximately $85,000.00 in credit card and home equity debt, (*see* J.A. 1286-87.)  Jones' family ran through "[e]very bit of savings, every credit card, everything we had."  (J.A. 1406.)  Meanwhile, Jones had to explain her termination to her family, including her four young children, neighbors, and business associates.  (J.A. 1287.)

Furthermore, following her termination, Jones' testified she applied to "many many jobs," (J.A. 1278), preparing over a hundred job applications, (J.A. 1280), and working "tirelessly" to look for jobs on the Internet, (J.A. 1406; *see also* J.A. 1280.)  Further, "in the interviews that [Jones] did go on, it was, they would always get to the question, why were you terminated?  And that was not a good conversation."  (J.A. 1287.)  The conversation about Jones' termination is exacerbated by numerous statements in SouthPeak's public filings referencing her termination, (*see* J.A. 1288-90), explaining, "[o]ur senior management lacked the necessary experience," (*see* J.A. 1290-91.)  The District Court recognized, "the jury could reasonably infer emotional stress in the interviews from the proof that the conversation about her termination from SouthPeak did not go well" and

49

"distress associated with an inability to secure employment—an inability that was aggravated by the need to repeatedly discuss and explain an unlawful firing in job interviews." (J.A. 2080.)

Jones did not secure full time employment until July 25, 2011, approximately twenty-three (23) months after her termination, and only with the help of another employee who previously worked with Jones. (*See* J.A. 1281, 1287.)

The *Knussman* factors only support the District Court's reduced compensatory damages award of $100,000.00 total. As stated above, Jones did not seek medical attention, or psychiatric or psychological treatment, due to her emotional distress. Jones, however, resorted to religion and prayer, as corroborated by her husband. Her husband further corroborated Jones' constant crying and difficulty sleeping following her termination.

The factual context of Jones' emotional distress stems as far back as the months following her discovery of the unreported payment, which Jones described as an "extremely stressful situation" and she "felt like [she] was working for the mob." (J.A. 1278.) Jones' husband testified Jones "didn't know what to do" and "she was scared." (J.A. 1405.)

Following her termination from SouthPeak, the factual context of Jones' emotional distress changed. No longer was she on edge due to the unlawful

conditions at SouthPeak; rather, now, her family was thrust into economic turmoil from the loss of nearly $200,000 in income. To make matters worse, Jones did not receive full time employment until twenty-three (23) months following her termination, likely in part due to having to address her termination with each prospective employer. Just scrapping by off VEC benefits, exhausted savings, and credit card and home equity debt, Jones had to fight to keep her family solvent.

Possibly most important to this analysis is the nexus between the conduct of Defendants and Jones' emotional distress. Defendants directly caused Jones' emotional distress through their actions in failing to report/disclose and covering up Phillips' payment to terminating Jones for doing the right thing and reporting what she reasonably believed to be a violation of law.

Finally, Defendants rely upon *Cline*,[14] *Hetzel*, and *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639 (4th Cir. 2002), cases demonstrative of the type of compensatory damages Jones is allegedly entitled. (Appellants' Br., Doc. No. 20, at 31-33.) In each of these cases, however, the plaintiff was not terminated. *See Dennis*, 290 F.3d at 643, 653 (plaintiff was only *passed over for a promotion*); *Cline*, 144 F.3d at 304-06 (plaintiff was merely *demoted*); *Hetzel*, 89 F.3d at 170, 171-72 (4th Cir. 1996) (defendants only *failed to promote* plaintiff).

---

[14] Defendants *again* incorrectly state the compensatory damages award related to a claim under Title VII. (*See* Appellants' Br., Doc. No. 20, at 31-33; J.A. 1968.)

51

Here, Jones was **terminated**.  In addition, Jones was terminated from a prestigious, very public position as CFO for a publicly traded company.  Further, Jones was terminated as a direct result of her lawful act in reporting what she reasonably believed to be fraudulent activity on the part of Defendants.

The District Court, therefore, did not abuse its discretion by finding Jones presented sufficient evidence to support a compensatory damages award of $100,000.00.

## IV.   THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY UPON RECEIPT OF AN INCONSISTENT VERDICT.

On appeal, this Court reviews a denial of a motion to alter or amend the judgment under Rule 59(e) for an abuse of discretion.  *Robinson*, 599 F.3d at 407 (citing *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)).  "Rule 59(e) provides that a court may alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice."  *Id.*  "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct."  *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485 (1933).

## A.     The District Court Did Not Abuse its Discretion in Instructing the Jury Following Receipt of the First Jury Verdict.

Pursuant to Rule 49(b) of the Federal Rules of Civil Procedure, the District Court may "direct the jury to further consider its answers and verdict" "[w]hen the answers are consistent with each other but one or more is inconsistent with the general verdict." Fed. R. Civ. P. 49(b)(3)(B).

The Ninth Circuit acknowledged, "[a] line of cases involv[ing] discrepancies between findings of liability and damage awards, typically arising when a jury finds liability but nonetheless awards zero damages." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1036 (9th Cir. 2003) (citing *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474 (1933)). Although apparent inconsistencies between general liability verdicts and damage awards are not necessarily fatal, *see id.* at 1035-36; *see also Hines v. IBG Intl., Inc.*, 813 F.2d 1331, 1334 (4th Cir. 1987) (finding where verdict are "incapable of being nicely dissected into their constituent parts," an "apparent inconsistency is not fatal"), it is preferable for the Court to clear up an apparent inconsistency before discharging the jury. *See* Fed. R. Civ. P. 49(b)(3); *see also Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 53 (2d Cir. 1992) (indicating "resubmission of the determinations for reconsideration or clarification" is an appropriate response to apparent inconsistencies); *cf. Ladnier v. Murray*, 769 F.2d 195, 198 & n.3 (4th Cir. 1985) (implying further instructing the jury to resolve apparent inconsistencies in a special verdict form is ideal).

53

In this case, the District Court's decision to instruct the jury following receipt of the first verdict form, without objection by defense counsel, was proper, in accordance with Rule 49(b)(3) of the Federal Rules of Civil Procedure, and not an abuse of discretion. As the District Court noted the initial jury verdict finding Phillips and Mroz liable to Jones, but failing to assess any damages against Phillips or Mroz, (J.A. 2045; *see also* J.A. 1936), represented a "quintessential version of inconsistent verdicts: a finding of liability with no damages award," (J.A. 2064.) Therefore, "[b]ecause of the ambiguous and potentially inconsistent verdict against Phillips and Mroz," (J.A. 2051), it was "appropriate to have the jury eliminate the apparent inconsistency before it was discharged," (J.A. 2064.) As a result, the District Court proceeded to instruct the jury, without objection from defense counsel, (*see* J.A. 1935-36), to clarify the inconsistent verdict, (*see* J.A. 1936-38.)

Thereafter, the District Court received a note from the jury and, upon receipt, conferred with counsel, at which time defense counsel *explicitly agreed* with the District Court's decision to instruction the jury to amend the verdict form to reflect the note. (*See* J.A. 1939-40.)

After the District instructed the jury to amend the verdict form to reflect the statement in the note, one or more of the jurors communicated the need to retire for further discussion. (*See* J.A. 1941, 2055.) After returning the final verdict, and upon request by defense counsel, the jury was polled and each juror affirmed the

54

amended verdict. (*See* J.A. 1952, 1954-55.) Therefore, as recognized by the District Court, "[a]s the ensuing events disclosed, the initial verdict did not represent a view upon which there was unanimous agreement." (J.A. 2064.) The District Court, therefore, properly instructed the jury to "further consider its answers and verdict," pursuant to Rule 49(b)(3)(B), and did not abuse its discretion.

**B.   The Second Verdict is Not Inconsistent and, Therefore, the District Court Did Not Abuse its Discretion.**

"Even if the verdicts are inscrutable, however, their apparent inconsistency is not fatal." *Hines*, 813 F.2d at 1334. Appellate courts recognize inconsistent verdicts in civil cases must be accepted. *Id.* As the District Court held,

> A finding that the individual Defendants were responsible for Jones' compensatory damages was not against the weight of the evidence. Nor was a finding that the corporate Defendant was responsible for Jones' back pay damages. The Defendants only take issue with the combination of the two general awards, but the Court may not reject the amended verdict and order a new trial simply because the jury found distinctions in the Defendants' actions that the Defendants did not themselves perceive.

(J.A. 2065-66.) At trial, the District Court noted:

> THE COURT: . . . [The jury] award[s] no compensatory damages against the company, just the backpay. Then they split what they viewed as the other damages and awarded half against Phillips and half against Mroz. That's what they did. You can see on the face of it. . . .
>
> THE COURT:      They . . . clearly did want to find Mr. Phillips liable, and they clearly did want to find Mroz liable, and somewhere

55

along the line they decided that it was the compensatory damages they wanted to put on Phillips and Mroz.

MR. HOLDEN:  But the evidence wouldn't support a verdict of no backpay but compensatory damages.

MR. THORSEN:  Why not?  They're assessing backpay to the corporation, who's the employer.

THE COURT:  Who's the employer.  And the personal damages they're putting on the officers.  That seems to me to be what they're doing.

Do you want document to poll the jury?

MR. HOLDEN:  Yes, I do.

(J.A. 1947, 1952.)  Indeed, upon request by defense counsel, the District Court polled the jury and each juror affirmed the amended verdict.  (*See* J.A. 1952, 1954-55.)

Finding the two individual defendants liable for compensatory damages and personal harm rather than back pay damages and lost income, assessed against the corporate defendant, is a perfectly reasonable apportionment of damages and not against the weight of the evidence presented at trial.  The jury was never required to assess both back pay and compensatory damages against any defendant found liable, as it seems Defendants allege.  (*See* Appellants' Br., Doc. No. 20, at 38-39.)  Therefore, the District Court did not abuse its discretion in accepting the second verdict form following a poll of the jury.

**C.    The Jury Did Not Exceed the Instructions of the District Court.**

As clearly evidenced at trial, and ignored by Defendants, (*see* Appellants' Br., Doc. No. 20, at 40), the jury decided to deliberate further after being instructed to amend the jury verdict, (*see* J.A. 1941, 2055), instructions explicitly agreed upon by defense counsel, (*see* J.A. 1939-40.)   Again, after receipt of the final verdict, and upon request by defense counsel, the District Court polled the jury and each juror affirmed the amended verdict.  (*See* J.A. 1952, 1954-55.)

Defendants request this Court to make a finding of law that a jury is required to follow instructions, made in an effort to ascertain the jury's decision and resolve an inconsistent verdict as to liability and damages, to amend a verdict form to reflect a non-unanimous verdict.  From the original verdict form to the final verdict form, the jury clearly believed both Phillips and Mroz to be liable and the only issue was the method by which they were to assess damages.  Simply because the District Court instructed the jury to amend its verdict form to reflect Phillips and Mroz not to be liable for damages, and the jury realized that was not its intention, does not foreclose the jury from properly amending its verdict form to reflect its true decision.  Therefore, the jury did not exceed the instructions of the District Court and the District Court did not abuse its discretion in refusing to order the jury enter the verdict form in a manner instructed by the District Court or order a new trial.

57

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Jones respectfully request this Court affirm the District Court's rulings and hold as follows:

a.      Jones exhausted her administrative remedies against Phillips and Mroz;

b.      The four-year statute of limitations set forth at 28 U.S.C. § 1658(a) applies to actions filed in federal court under 18 U.S.C. § 1514A;

c.      Emotional damages are available under 18 U.S.C. § 1514A(c) and the District Court did not abuse its discretion in finding Jones presented sufficient evidence to support an award of $100,000.00 in compensatory damages; and

d.      The District Court did not abuse its discretion in instructing the jury following receipt of the first jury verdict and after receipt of the note, accepting the second verdict form following a poll of the jury, and refusing to order the jury to enter the verdict form in a manner instructed by the District Court or order a new trial.

## <u>STATEMENT WITH REQUEST TO ORAL ARGUMENT</u>

Jones requests oral argument to have the opportunity to respond to the issues

raised in this appeal.

Respectfully submitted,

May 21, 2014

ANDREA GAIL JONES

_____/s/_____

James B. Thorsen, Esq.
VSB No. 18113
Attorney for Andrea Gail Jones
MARCHANT, THORSEN, HONEY, BALDWIN & MEYER, LLP
5600 Grove Avenue
Richmond, VA 23226
Telephone:  (804) 285-3888
Facsimile:   (804) 285-7779
E-mail:  jim@mthblaw.com

*Counsel for Plaintiff-Appellee Andrea Gail Jones*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   The word count of this brief is <u>13,948</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.

May 21, 2014


<u>     /s/                </u>
James B. Thorsen, Esq.
VSB No. 18113

## **CERTIFICATE OF SERVICE**

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this May 21 2014, filed the required copies of the foregoing Brief of Appellee in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Brief of Appellee using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Kevin D. Holden
JACKSON LEWIS PC
Suite 1200
1021 East Cary Street
Richmond, VA 23219
Email: kevin.holden@jacksonlewis.com


_/s/_____
James B. Thorsen, Esq.
VSB No. 18113

61